# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2713

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Sedighe Honarvar, | * |
| | * |
| Appellant. | * |
| | * |

_____

No. 06-2720

_____

Appeals from the United States
District Court for the Southern
District of Iowa.

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Rahim Zamanian, | * |
| | * |
| Appellant. | * |

_____

Submitted: January 9, 2007
Filed: February 26, 2007

_____

Before WOLLMAN, BEAM, MELLOY, Circuit Judges.

BEAM, Circuit Judge.

Rahim Zamanian and Sedighe Honarvar, husband and wife, appeal from guilty jury verdicts rendered on all counts on July 15, 2005. The couple was convicted of conspiracy, bank fraud, and making false statements for their scheme of fraudulently obtaining funds from various financing institutions. We affirm.

## I.    BACKGROUND

The following recitation of facts is stated in the light most favorable to the jury's verdict. United States v. Stevens, 439 F.3d 983, 986 (8th Cir. 2006). Honarvar and Zamanian carried out a fraudulent scheme to obtain funds by completing applications for credit card accounts with false information regarding the nature of their income. For example, the couple would state income upwards of $80,000 on the applications when, in fact, their tax returns listed total income ranging from $1,919 to $25,700. And, they represented to low income housing officials and food stamp administrators on more than one occasion that they had little or no income. Once they were issued the credit cards, they transferred funds from the newly-issued credit card accounts to their pre-existing credit card accounts in order to make payments on those pre-existing accounts. They would then accumulate additional debt and charges on the cards. As a result of this scheme, the couple accumulated a large amount of credit card debt and subsequently discharged approximately $189,000 of credit card debt in bankruptcy court. The various counts for bank fraud and false statements for each defendant related to specific applications submitted by each individual for various cards, including applications for an AT&T Universal MasterCard, a Chase Manhattan Platinum MasterCard, and a Discover Platinum Card.

The jury convicted Zamanian and Honarvar on all counts. The district court[1] sentenced Zamanian to twelve months and one day of imprisonment on counts one, five, six, ten and eleven, to be served concurrently; and ordered restitution in the amount of $45,501.47. Honarvar received a term of imprisonment of one day, with credit for time served on counts two, three, four, seven, eight, nine, and eleven, along with a program of home confinement for six months; and was ordered to pay restitution in the amount of $45,501.47.

On appeal, Honarvar contends that the questions regarding annual household income on the disputed credit card applications were too ambiguous to form the basis of prosecution for false statements, and that there was insufficient evidence to support the convictions on all charges. Zamanian likewise claims there was insufficient evidence supporting the convictions for bank fraud, false statements and conspiracy, and further claims that the judgment and sentence on both the bank fraud and false statement offenses violate the Double Jeopardy Clause.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Both parties challenge the sufficiency of the evidence on all counts. We review de novo the sufficiency of the evidence and view that evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences. United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006). "We reverse only if no reasonable jury could find the defendant[s] guilty beyond a reasonable doubt." Id. We do not weigh the evidence or the credibility of the witnesses. Rather "the jury has sole

---

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

responsibility for resolving conflicts or contradictions in testimony, and we must resolve credibility issues in favor of the verdict." Id.

The crux of Zamanian's argument is that the government failed to prove that he acted with the subjective state of mind that makes an objectively false statement criminal, that is, that he knowingly stated his income at a much higher level than it actually was with the intent to defraud or influence the financial institutions issuing the credit cards. Honarvar advances a slightly different argument, claiming that the government failed to prove the falsity of the statements she made regarding her income on three credit card applications. She also claims, like Zamanian, that the government failed to prove that the statements, even if false, were knowingly false. Viewing the evidence as we must, and applying our strict standard of review, we disagree.

One version of why Zamanian and Honarvar chose their stated income on the credit card applications, and the reason advanced by Zamanian at trial,[2] was that when they completed the applications they fully *expected* to make upwards of $82,000 in the stock market and in an overseas Iranian investment. That, however, is not the story the jury walked away with after the trial testimony. We cannot weigh the credibility any differently today. The government presented sufficient evidence that, in fact, Zamanian and Honarvar conspired and knowingly falsified income on the credit card applications in an attempt to increase the amount of credit extended so that they could continue the scheme of accumulating credit as alleged in the indictment. And, the jury heard evidence that the amount of income stated on a credit card application, although not determinative, definitely makes a difference in the amount of credit extended to that particular applicant.

_____

[2]Honarvar did not testify.

-4-

Honarvar further argues that even though the government demonstrated that Honarvar indeed made inconsistent statements regarding income on credit card applications and actual income reflected on income tax returns, it failed to prove that one of those statements was true and the others false. Thus, according to Honarvar, all the government proved was inconsistency, not falsity. Given our standard of review, we do not follow this line of reasoning. The jury could decide for itself which evidence it found more persuasive and make a sound determination regarding the falsity of Honarvar's statements on the credit card applications at issue.

### B. Ambiguity of "Income"

Honarvar argues that the question posed on the credit card applications, seeking "income" or "annual household income" is so excessively vague or fundamentally ambiguous that it cannot form the basis for any charge based on a false statement in response to that question. We disagree. Persons of ordinary intelligence would agree that the term "income" is one with a common usage and understanding, especially when used on a credit card application. Further, Zamanian and Honarvar objected to the court's proposed inclusion of a definition of the term "income" in the jury instructions. It is incongruous for Honarvar to now argue that the ambiguity of the term led the jury astray when it was within her purview to instruct the jury accordingly.

### C. Double Jeopardy

Even when not preserved below, as Zamanian concedes, we have reviewed double jeopardy arguments for plain error. United States v. Gamboa, 439 F.3d 796, 809 (8th Cir.), 127 S. Ct. 605 (2006). Under this standard, the court will correct the error "'if the error results in a miscarriage of justice or seriously affects the fairness, integrity, or public reputation of the judicial proceedings.'" United States v. Ihmoud,

454 F.3d 887, 895 (8th Cir.), cert. denied, 127 S. Ct. 701 (2006) (quoting United States v. Jackson, 155 F.3d 942, 947 (8th Cir. 1998)).

> The Double Jeopardy Clause is violated in a single proceeding only where multiple punishments are imposed for the same crime contrary to the legislature's intent. In order to determine whether two crimes are the same for double jeopardy purposes, we apply the test of Blockburger v. United States, 284 U.S. 299, 304 (1932). Under Blockburger, if each offense requires proof of an element not required by the other, the crimes are not considered the same, and a double jeopardy challenge necessarily fails. We have recognized that the Blockburger test focuses on the statutory elements of the offenses, rather than the evidence presented at trial. In addition, a proper analysis of a double jeopardy claim requires us to examine not only the statutory provisions at issue, but also the specific charges brought against the defendant in the indictment.

Gamboa, 439 F.3d at 809 (citations and quotations omitted).

Zamanian acknowledges that on their statutory faces the crimes of bank fraud under 18 U.S.C. § 1344 and false statements under 18 U.S.C. § 1014 do not present a double jeopardy problem, as each contains elements not included in the other. United States v. Chacko, 169 F.3d 140, 148 (2d Cir. 1999) (noting that section 1344 bank fraud requires the distinguishing element of a scheme or artifice, while section 1014 false statement offense requires the distinguishing element of a false statement); United States v. Dupre, 117 F.3d 810, 818 (5th Cir. 1997) (same). Notwithstanding this concession, Zamanian encourages this court to examine the jury instructions in this case, claiming that the instructions on the bank fraud offenses specifically charged to the jury incorporated or subsumed the false statement offenses.

Looking at the statutory elements of the offenses in addition to the specific charges brought against Zamanian in the indictment, as we must under Blockburger, we have no double jeopardy concerns. While novel, Zamanian's argument that the

-6-

jury instructions violate the Double Jeopardy Clause is unavailing. The jury instructions adequately set forth the statutory elements of the offenses, along with additional descriptions of the particular acts at issue on each count. The fact that both charges were based on statements made by Zamanian on the credit card applications, however, does not mean that the instructions on bank fraud and false statements subsume each other in violation of <u>Blockburger</u>.

## III.   CONCLUSION

For the reasons set forth herein, we affirm.

_____