# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-4136

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Stewart Jenkins, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: September 25, 2007
Filed: October 12, 2007

———————

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Stewart Jenkins was indicted for: possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The jury convicted Jenkins on all counts. The district court[1] subsequently sentenced Jenkins to 180 months' imprisonment. Jenkins appeals his convictions and sentence, arguing that the evidence is insufficient to support the jury's

———————

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

guilty verdicts and that the district court erred in considering cash seized in calculating drug quantity. We affirm.

## I. *Background*

The following facts are recited in the light most favorable to the verdict. *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007). While investigating a drug complaint, undercover law enforcement officers, driving an unmarked van, stopped behind an apartment building in Des Moines, Iowa. The officers opened the their van door to see the license plate numbers of other vehicles also behind the building. Jenkins and Charlene Gordon were standing near the vehicles.

Jenkins asked the undercover officers "What's up?" when he saw them looking out their van door. Without identifying himself, one of the officers replied "What's up?" to Jenkins. Jenkins again stated "What's up?," and the police officer again responded the same. Jenkins told the officer that "it's not cool looking out your door," and the officer asked Jenkins what was wrong with looking out the door. Jenkins became agitated and stated that he would show the police officer "What's up." Jenkins then walked around the building, and the officers saw a light come on in the lower apartment.

As Jenkins came out the back door of the lower apartment a short time later, he held his right hand behind his back. The officer who had previously spoken to Jenkins saw that Jenkins was holding a silver object, and the officer immediately identified himself as law enforcement. When the officer asked Jenkins to show his hands, Jenkins dropped a silver handgun which was loaded with five rounds of ammunition. During their search of Jenkins, officers found keys that matched the apartment Jenkins had gone into. They also found two cell phones, $782 in cash, and crack cocaine valued at approximately $100.

When questioned by police, Gordon first claimed that she had met Jenkins for dinner, but she then admitted that she actually came to Jenkins's apartment to buy $50 worth of crack cocaine from him. Gordon, who knew Jenkins as "J", acknowledged that she had accompanied friends to purchase crack cocaine from Jenkins on four or five prior occasions. Gordon spoke with Jenkins via cell phone on the day of Jenkins's arrest. During their conversation, Jenkins told Gordon to meet him at his home. Gordon concealed her purchase money in an Arby's bag, but police arrived before the transaction was consummated. Officers reviewed Gordon's cell phone log, which showed that the last number she had called was "J," and when they re-dialed, Jenkins's phone rang. Police also found Gordon's Arby's bag containing $50.

Pursuant to a warrant, police searched the apartment that Jenkins had entered. Inside, police found $8,036 in the apartment's only occupied bedroom, hidden in a container concealed by a pile of men's clothing. In the living room, police found some unusual gauze bandage that matched the gauze that Jenkins had wrapped around his finger. The kitchen contained a microwave oven coated with cocaine residue, scales with white residue, baking soda, plastic baggies, 14 grams of cocaine, and more cash.

Jenkins's trial lasted three days. In addition to the facts already cited, other government witnesses supplied further testimonial evidence. Silas Taylor testified that he had rented the apartment from the landlord, and he had allowed Jenkins to move in during the summer of 2005. Taylor moved out in August of that year to move in with his girlfriend, and he did not leave anything behind when he moved.

Bruce Bennett, the owner of the apartment, confirmed that he had seen Jenkins inside and outside the apartment on numerous occasions. Although Jenkins was not on the lease, Bennett knew he was staying there, and Jenkins paid rent to Bennett in person two or three times.

An officer from the scene and familiar with the drug trade testified that 14 grams of cocaine was more than a typical user would possess and that guns were a common tool of the drug trade.

The jury found Jenkins guilty on all counts and attributed to him at least five grams of crack cocaine on the possession with intent count. At sentencing, Jenkins's Presentence Investigation Report (PSR), set Jenkins's advisory Guidelines range at 168 to 210 months. The district court granted a downward variance, imposing concurrent 120-month sentences for the possession with intent to distribute and the felon in possession counts. Jenkins also received a 60-month sentence for possession of a firearm in furtherance of drug trafficking.

## II. *Discussion*

Jenkins raises two arguments on appeal. First, he argues that insufficient evidence supports his convictions for possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A). Second, he argues that the district court erred in considering the cash seized from his apartment in calculating drug quantity for sentencing purposes.

### A. *Sufficiency of the Evidence*

First, Jenkins asserts that insufficient evidence exists to support his conviction for possession of cocaine base with intent to distribute. He argues that there was not enough evidence linking him to the apartment where the cocaine was found and that the government's witnesses, in particular Charlene Gordon, were not credible.

We review challenges to sufficiency of the evidence de novo. *United States v. Honarvar*, 477 F.3d 999, 1000 (8th Cir. 2007). We view the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences. *Id*. Reversal

is only appropriate if no reasonable jury could find guilt beyond a reasonable doubt. *Id*. "We do not weigh the evidence or credibility of the witnesses. Rather the jury has sole responsibility for resolving conflicts or contradictions in testimony, and we must resolve credibility issues in favor of the verdict." *Id*. (internal quotations and citations omitted).

To convict Jenkins of possession of cocaine base with intent to distribute, the government was required to show beyond a reasonable doubt that Jenkins: (1) was in possession of cocaine base; (2) knew he was in possession of cocaine base; and (3) intended to distribute some or all of the cocaine base. *United States v. Thompson*, 285 F.3d 731, 733 (8th Cir. 2002). Possession need not be actual, it may also be constructive. *United States v. Cawthorn*, 429 F.3d 793, 798 (8th Cir. 2005). To prove constructive possession the government must show: "(1) knowledge of an object, (2) the ability to control it, and (3) the intent to do so." *Id*.

Jenkins bases his insufficiency claims on the argument that the government's witnesses were so thoroughly impeached that no reasonable jury could find them credible. However, credibility of the witnesses is a matter for the jury to decide. "Although [a defendant may] conten[d] that the government witnesses were not credible, we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury." *United States v. Bower*, 484 F.3d 1021, 1025 (8th Cir. 2007) (internal quotations and citations omitted).

Jenkins's claims notwithstanding, we hold sufficient evidence supports the jury's determination that he possessed over five grams of cocaine base with intent to distribute. Jenkins had a gram of cocaine in his pocket at the time of the arrest, with two cell phones, and a large amount of cash during a planned drug deal with Gordon. Police investigation corroborated Gordon's testimony when police checked her cell phone log and found the Arby's bag just as she had described.

A reasonable jury could have found that Jenkins, as occupant of the apartment, exercised at least constructive possession of the 14 grams of cocaine found in the apartment. In addition to the testimony of Bennett, Silas and Gordon stating that Jenkins was staying at the apartment, there was also evidence showing that Jenkins had paid rent to the landlord, law enforcement saw Jenkins go into the apartment and turn the light on, law enforcement saw Jenkins and his car outside of the apartment, and Jenkins had keys to the front and back doors of the apartment in his pocket. Moreover, the unusual gauze that Jenkins wore on his hand was found in the living room of the apartment, and cocaine, baggies and cash were found both in the apartment and in Jenkins's pockets.

A reasonable jury could have found intent to distribute based on the dealer quantity of cocaine in the apartment along with the baggies, scales and manufacturing equipment. The absence of user paraphernalia also corroborated Jenkins's intent to distribute. Viewing this evidence in the light most favorable to the verdict, the evidence was sufficient to support a reasonable jury's conclusion that all the elements of possession of cocaine base with the intent to distribute were met beyond a reasonable doubt.

Second, Jenkins contends that insufficient evidence exists to support his conviction under 18 U.S.C. § 924(c), which requires "evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of furthering, advancing or helping forward the drug crime." *United States v. Bell*, 477 F.3d 607, 613 (8th Cir. 2007) (internal citations omitted). We have recognized that displaying a firearm and demonstrating a willingness to use it can further drug trade by protecting territory. *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003).

Sufficient evidence exists to support a reasonable jury's conclusion that Jenkins possessed his gun in furtherance of drug trafficking. When his drug deal with Gordon was interrupted by undercover police, Jenkins threatened that he would show them "What's up" and immediately retrieved his gun from inside the apartment. Jenkins claims that he could not have possessed the gun in furtherance of the drug deal because he initially left the gun in the apartment and that the gun was not readily available. But, during the drug deal, Jenkins quickly went inside and got the loaded gun to challenge the would be interlopers.

## B. *Drug Quantity Calculation*

Jenkins also claims that the district court improperly considered cash seized from Jenkins's residence in calculating drug quantity. We review the district court's application of the Guidelines de novo and its factual findings regarding drug quantity for clear error. *United States v. Alexander*, 408 F.3d 1003, 1009 (8th Cir. 2005).

In order to "accurately reflect the scale of drug trafficking activity, the Guidelines authorize the district court to convert seized money into a quantity of drugs." *United States v. Echols*, 2 F.3d 849, 850 (8th Cir. 1993). Jenkins acknowledges this rule, but he argues that because there was insufficient evidence to tie him to the apartment where the cash was found, he should not have been sentenced accordingly.

The preponderance of the evidence standard is the appropriate standard, for sentencing purposes, for proving drug quantity. *Id*. The evidence summarized adequately linked Jenkins to the apartment and its contents. The district court's finding regarding the quantity of cocaine base attributable to Jenkins was not clearly erroneous.

As to Jenkins's argument that his case should be remanded for resentencing based on the Guidelines' powder cocaine to crack cocaine quantity ratio, this court has

rejected the argument that a district court may depart downward based on a rejection of the Guidelines' powder cocaine to crack cocaine quantity ratio. *United States v. Spears*, 469 F.3d 1166, 1170–78 (8th Cir. 2006) (en banc).

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____