# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-1961

———————

United States of America,         *
         *
                Appellee,         *
         *    Appeal from the United States
        v.               *    District Court for the
         *    Western District of Arkansas.
Montrey D. King,         *
         *
                Appellant.        *

———————

Submitted: January 15, 2008
Filed: March 6, 2008

———————

Before WOLLMAN and SMITH, Circuit Judges, and GRITZNER,[1] District Judge.

———————

GRITZNER, District Judge.

Montrey King (King) pled guilty to one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). The district court[2] sentenced King to 188 months of imprisonment. On appeal, King argues the district court erred in calculating drug quantities for purposes of determining his advisory Sentencing Guidelines range. King also argues he is entitled to a reduction

———————

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

[2]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

in his sentence based on the United States Sentencing Commission's recent amendments to the Guidelines that modify the advisory sentencing ranges for crack cocaine offenses. We affirm.

## I.    BACKGROUND

In May 2006, a confidential informant (CI) working in cooperation with the Fourth Judicial Drug Task Force (JDTF) bought quantities of crack cocaine from King during three controlled buys, which all occurred at an apartment located at 4250 Valley Lake #4, Fayetteville, Arkansas (Valley Lake apartment). During the third controlled buy, two other people entered the Valley Lake apartment to buy crack cocaine from King.

On May 24, 2006, the JDTF executed a search warrant at the Valley Lake apartment. The JDTF found King in the bedroom smoking marijuana and placed King under arrest. The JDTF recovered marijuana, crack cocaine, ecstasy, a digital scale, drug paraphernalia, a .45-caliber semi-automatic Glock pistol, and $5390 in cash. The JDTF identified $100 of the money as drug task force funds used in the controlled buys.

King was charged in a five-count indictment on three counts of distribution of crack cocaine, one count of possession with intent to distribute crack cocaine, and one count of being a felon in possession of a firearm. Pursuant to a plea agreement, King pled guilty to possession with intent to distribute crack cocaine (count four).

A pre-sentence investigation report (PSR) was prepared by the United States Probation Office. The PSR calculated the amount of crack cocaine attributed to King by converting the $5290 in cash found at the Valley Lake apartment to a drug

equivalency of 52.9 grams of cocaine.[3] Adding the conversion amount to the 1.97 grams of crack cocaine seized at the residence and 4.63 grams sold during the controlled buys, the PSR indicated King was accountable for a total of 59.5 grams of crack cocaine, which resulted in a base offense level of 32. A two-point increase for possession of a firearm and a three-point reduction for acceptance of responsibility produced a total offense level of 31. King's criminal history category VI and total offense level of 31 resulted in an advisory Guidelines range of 188 to 235 months.

At sentencing, King's girlfriend, Tameka Douglas (Douglas), testified on King's behalf. In sum, Douglas testified that (1) the $5290 in cash belonged to her; (2) King did not live at the Valley Lake apartment, and King did not know where Douglas kept her money; (3) $2500 of the money was from Douglas' 2005 tax refund check, and the rest of the money was work savings; (4) Douglas reported $6250 in earnings on her 2005 tax form; (5) on her 2005 tax return, Douglas declared two of her children as dependents that lived with her, but those children actually lived with Douglas' aunt; (6) Douglas alone paid for rent, utilities, and groceries; (7) King did not have a job, and Douglas never asked King the source of his money; and (8) Douglas did not know King dealt drugs or kept drugs in the apartment.

The JDTF lead investigator, Detective Tyler Hughes (Detective Hughes), testified for the government. Detective Hughes testified that when the law enforcement officers arrived at the Valley Lake apartment, they found King in a bedroom smoking marijuana. King was placed under arrest and informed of his Miranda[4] rights. King told Detective Hughes, "anything illegal in this house is mine," and King admitted to Detective Hughes that he sold crack cocaine. Detective Hughes

---

[3]The $5290 is the balance after deducting the $100 controlled buy funds. The conversion rate of $100 per gram was based on the testimony of drug agents and consistent with the per gram purchase price of the controlled buys.

[4]Miranda v. Arizona, 384 U.S. 436 (1966).

further testified the JDTF recovered crack cocaine, ecstacy, marijuana, and drug paraphernalia, as well as items consistent with drug distribution, such as plastic baggies, razor blades, and glass plates used for cutting and packaging crack cocaine. Detective Hughes said the JDTF recovered a total of $5290 in a dresser drawer. Detective Hughes explained the $5290 did not include the $100 identified as pre-recorded JDTF money, $60 of which was found on King's person and the other $40 commingled with the money found in the dresser drawer. Detective Hughes also testified that during the search, a confiscation report was completed and signed by King. Therein, King listed 4250 Valley Lake #4, Fayetteville, Arkansas, as his address and claimed the $5290 belonged to him. Detective Hughes stated that he had a conversation with Douglas when the confiscation report was being completed and informed Douglas some of the money seized was controlled buy money that belonged to the JDTF. At that time, Douglas told Detective Hughes, "That's not my money then."

After listening to all the testimony and the parties' arguments, the district court found Douglas was not a credible witness, pointing out several inconsistencies in Douglas' testimony including (1) Douglas' testimony that King had no money, that she did not take drugs, and that the $5290 belonged to her, yet failing to explain why drugs were found with the money; (2) Douglas' testimony that she did not have a checking account and received her tax refund via check, yet on her tax return, Douglas listed a checking account routing number and checked the box for direct deposit; and (3) Douglas' steadfast denial that she knew anything at all about any drug operation, yet in the apartment she shared with King, law enforcement officers found King smoking marijuana in the bedroom and found drugs and drug paraphernalia in the bedroom drawer. Based on the other evidence presented, the unchallenged portions of the PSR, and Detective Hughes' testimony, the court concluded it was not unreasonable to believe the money seized from the Valley Lake apartment on May 24, 2006, "was drug money that belonged to Mr. King and is attributable to Mr. King." Having made this finding by a preponderance of the evidence, the district court

-4-

overruled King's objections and adopted the PSR and the calculations therein, finding a total offense level of 31, criminal history category VI, which produced an advisory Guidelines range of 188 to 235 months. After the parties presented sentencing arguments, the district court sentenced King to 188 months of imprisonment to be followed by four years of supervised release and imposed a $7500 fine and a $100 special assessment. This appeal followed.

## II.    DISCUSSION
### A.    Drug Quantity Calculation

King argues the district court erred by improperly converting the $5290 found during the search into crack cocaine quantities attributable to him for purposes of calculating his advisory Guidelines range. "We review the district court's factual finding of drug quantity for clear error and 'will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made.'" United States v. Minnis, 489 F.3d 325, 329 (8th Cir. 2007) (quoting United States v. Newton, 31 F.3d 611, 614 (8th Cir. 1994)), cert. denied, 128 S. Ct. 1097, 2008 WL 114228, 76 U.S.L.W. 3373 (U.S. Jan. 14, 2008) (No. 07-8027). "The government bears the burden of proving drug quantity by a preponderance of the evidence." United States v. Marshall, 411 F.3d 891, 894 (8th Cir. 2005).

As we have previously held, "[i]n order to 'accurately reflect the scale of drug trafficking activity, the Guidelines authorize the district court to convert seized money into a quantity of drugs.'" United States v. Jenkins, 505 F.3d 812, 817-18 (8th Cir. 2007) (quoting United States v. Echols, 2 F.3d 849, 850 (8th Cir. 1993) (per curiam), vacated and remanded, ___ S. Ct. ___, 2008 WL 177754 (U.S. Feb. 25, 2008) (No. 07-8863) (remanding for further consideration in light of Kimbrough v. United States, ___ U.S. ___, 128 S. Ct. 558 (2007))). See also Minnis, 489 F.3d at 330 (holding a district court does not err in extrapolating drug quantities from financial information such as the seizure of currency). In proving drug quantities for purposes of

sentencing, the preponderance of the evidence standard is appropriate. Jenkins, 505 F.3d at 818.

In this case, the district court's drug quantity findings required a determination of the origin of the $5290 found during the search of the Valley Lake apartment.[5] Beyond the physical evidence of the funds and their location, these findings were essentially credibility determinations. It is well settled that a district court's assessment of a witness' credibility is a judgment call and "virtually unassailable on appeal." Marshall, 411 F.3d at 895 (internal quotation omitted).

The district court established its drug quantity findings through the testimonies of Douglas and Detective Hughes. The district court stated its reasons for finding Douglas lacked credibility and to thus discount Douglas' claimed ownership of the $5290. The district court on the other hand credited Detective Hughes' testimony on behalf of the government and found record evidence supported Detective Hughes' testimony including King's own admissions, King's signature on the confiscation form claiming ownership of the $5290, and $100 of pre-recorded controlled buy funds being commingled with the $5290. The district court's drug quantity findings were not clearly erroneous, and thus the district court did not err in finding the government proved the drug quantities attributed to King by a preponderance of the evidence.

**B.     Consideration of Crack/Powder Cocaine Sentencing Disparity**

King argues this case should be remanded for resentencing based on the recent amendments to the Guidelines for crack cocaine offenses. In addition, for the first time in this appeal, King asserts he "might eventually benefit" from the district court's consideration of the crack/powder disparity in the Guidelines under 18 U.S.C. § 3553(a).

---

[5]King stipulated that $100 per gram was a fair conversion rate.

Two changes have occurred during the pendency of King's appeal. First, effective November 1, 2007, the United States Sentencing Commission adopted Amendment 706, which modifies the Guidelines ranges for crack cocaine offenses. See United States Sentencing Guidelines Manual (2007), App. C, Amend. 706. Amendment 706 adjusts downward by two levels the base offense level assigned to each threshold quantity of crack cocaine listed in the Drug Quantity Table. See U.S.S.G. § 2D1.1; U.S.S.G. Supp. to App. C, Amend. 706. The Sentencing Commission has given retroactive effect to Amendment 706, beginning March 3, 2008. See 73 Fed. Reg. 217-01 (Jan. 2, 2008). Thus, as authorized by 18 U.S.C. § 3582(c)(2),[6] King's request for reduction of sentence in light of Amendment 706 must be decided by the district court in the first instance.

The second change that occurred during the pendency of King's appeal was the Supreme Court's decision in Kimbrough. In Kimbrough, the Court held a sentence outside the Guidelines range is not per se unreasonable merely because the district

---

[6]Section 3582(c)(2) in pertinent part provides:

in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Under § 3582(c)(2), such relief is authorized only for amendments reducing the applicable Guidelines ranges listed in § 1B1.10(c). See U.S.S.G. § 1B1.10(c) (effective March 3, 2008). However, "[t]he authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right." Id. cmt. background (2008).

court considered the sentencing disparity created by the 100:1 crack to powder cocaine quantity ratio set out in the Guidelines as a factor in determining the sentence. Id. However, as we have previously held, "[w]e do not believe, though, that Kimbrough means that a district court now acts unreasonably, abuses its discretion, or otherwise commits error if it does not consider the crack/powder sentencing disparity." United States v. Roberson, __ F.3d __, __, Nos. 06-3458, 06-3663, 2008 WL 323223, at *4 (8th Cir. Feb. 07, 2008); see United States v. Johnson, __ F.3d __, __, No. 07-1930, 2008 WL 516518, at *3 (8th Cir. Feb. 28, 2008) ("Although Kimbrough empowers a district court to consider the disparity between guideline sentences for powder cocaine and crack, it does not require it to do so.").

In this case, Kimbrough is not of any assistance to King. At no time prior to this appeal did King raise the issue of the disparity created by the 100:1 crack to powder cocaine quantity ratio. Nor did King ask the district court to consider the disparity in determining his sentence. Thus, King cannot argue on appeal the district court erred by failing to consider that factor. See, e.g., United States v. Filipiak, 466 F.3d 582, 584 (7th Cir. 2006) (concluding "a defendant cannot complain on appeal that [his] sentence should have been reduced based upon § 3553(a) factors that were never brought to the attention of the district court"). Consequently, we conclude, in the posture of this case, remand to consider the applicability of Kimbrough is inappropriate.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court. We note however, our resolution of this appeal is without prejudice to King's ability to move for modification of his sentence pursuant to 18 U.S.C. § 3582(c). See, e.g., United States v. Williams, No. 07-1918, 2008 WL 283313, at *2 (8th Cir. Feb. 4, 2008) (per

curiam) (unpublished); <u>United States v. Crayton</u>, No. 07-2862, 2008 WL 162823, at *2 (7th Cir. Jan. 18, 2008) (unpublished order); <u>United States v. Brandy</u>, No. 06-2843, 2007 WL 4102745, at *1 (2d Cir. Nov. 19, 2007) (unpublished order).

_____