# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2631

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellee,　　　　　*
　　　　　　　　　　　　　　　　　*　　　Appeal from the United States
　　　　v.　　　　　　　　　　　　*　　　District Court for the
　　　　　　　　　　　　　　　　　*　　　Northern District of Iowa.
Anthony Charles Saddler, Jr.,　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellant.　　　　 *

_____

Submitted: March 12, 2008
Filed: August 13, 2008

_____

Before RILEY, GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Anthony Charles Saddler, Jr., was convicted after a jury trial on all five counts of a superceding indictment, which charged various narcotics distribution and firearms offenses. The district court[1] sentenced Saddler to 322 months' imprisonment. Saddler now appeals both his convictions and his sentence, arguing that insufficient evidence supported his drug and firearm conspiracy convictions and his firearm possession conviction, that the district court improperly presumed the advisory sentencing

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

guidelines range was reasonable and erred in considering the 18 U.S.C. § 3553(a) factors, and that the sentence violated his Sixth Amendment rights. We affirm Saddler's convictions and sentence.

## I. BACKGROUND

On February 26, 2006, officers of the Waterloo Police Department executed a search warrant at the residences at 630 West Mullan Avenue, 3853 Paige Drive and 112 Hartman Street, all in Waterloo, Iowa. The residences on West Mullan Avenue and on Hartman Street were within 1000 feet of a playground. Saddler, his cousin Marlon Earsery, Eddie Wade and Quintez Lotiker lived at the West Mullan Avenue residence. Saddler's girlfriend lived at the Paige Drive residence, and Courtney Buls, Earsery's girlfriend, rented the Hartman Street residence.

The search of the Hartman Street residence revealed significant quantities of crack cocaine, powder cocaine and marijuana. In the basement, officers discovered a locked safe, which contained $21,514.42 in cash, 122.56 grams of powder cocaine, 65.42 grams of crack cocaine, jewelry and documents. The documents included a title to Saddler's red Chevrolet Blazer, a purchase agreement for the Blazer, an application for title and registration for the Blazer, and a traffic ticket issued to Saddler. Near the safe, officers found titles in Saddler's name for a 1996 Chevrolet Tahoe and a 1994 GMC Suburban, 701.8 grams of marijuana and 80.26 grams of cocaine. In the basement rafters, officers recovered a laptop case that contained six pistols: a loaded .45 caliber Hi-Point with an obliterated serial number, a loaded 9mm Taurus, two loaded 9mm Bryco Jennings, a 9mm Luger, and a .22 caliber Sterling Arms. Throughout the rest of the house, the police seized 2212 grams of marijuana, 597.74 grams of powder cocaine, 217.1 grams of crack cocaine, baggies for packaging and a scale.

During the search of the 630 West Mullan Avenue residence, officers seized $1099.30 in cash, drug paraphernalia, certified mail addressed to Saddler and license plates issued to him.  In the shed behind the house, the police found 13.2 grams of marijuana hidden behind some tires.  Saddler's Blazer was located outside the residence. Finally, at the Paige Drive residence, officers found Saddler inside with his girlfriend, $1369 in cash and 4.3 grams of marijuana that Saddler admitted belonged to him.

The grand jury indicted Saddler on five counts.  Saddler pleaded not guilty and proceeded to a jury trial.  The jury returned a guilty verdict against Saddler on all five counts:  (1) conspiracy to distribute fifty grams or more of cocaine base within 1000 feet of a playground and to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), (b)(1)(D), 846, and 860; (2) possession with the intent to distribute cocaine within 1000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 860; (3) possession with the intent to distribute fifty grams or more of cocaine base within 1000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 860; (4) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (5) conspiracy to use or carry a firearm during and in relation to a drug trafficking crime and to possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o).

At trial, Earsery testified for the Government pursuant to a cooperation agreement.  Earsery testified that he and Everette Richardson originally came to Waterloo in February 2003 for the purpose of making money by selling drugs.  They lived with Richardson's mother.  Jessie Davis moved in with them by the summer of 2003.  Earsery, Richardson and Davis then moved to 1112 Langley Road and lived with Buls and another woman.  At these residences, Earsery, Richardson and Davis made and sold crack cocaine.  Earsery also went to Chicago once a month to obtain controlled substances from his source.

Earsery indicated that Saddler moved from Chicago to Waterloo in January 2005. By fall of that year, Earsery, Saddler, Rodell Leaks, Latiker and Wade all lived at 1264 West Mullan Avenue. They sold crack cocaine out of the 1264 West Mullan Avenue residence, and they shared customers. Eventually, Earsery, Saddler, Latiker and Wade moved to 630 West Mullan Avenue. Earsery testified that he, Saddler, Latiker, Wade, Leaks and Richardson all sold crack cocaine out of the 630 West Mullan Avenue residence. They again shared customers and gave each other drugs when needed for a sale.

Earsery, Richardson, Saddler, Latiker, Wade and Isaac Jackson all had access to the basement at the Hartman Street residence to store and retrieve their belongings. Although Earsery had stored the laptop case with the six guns in the basement, he testified that Saddler, Latiker, Wade, Leaks and Jackson also had access to the guns, which he referred to as "house guns" that anyone in the house could use. Earsery also testified that he had observed Saddler with firearms before and that Saddler preferred one of the 9mm Bryco Jennings pistols.

Jessie Davis also testified for the Government pursuant to a cooperation agreement. Davis stated that he, Earsery and Saddler had the same source for cocaine in Chicago. He indicated that a member of their group would go to Chicago to pick up cocaine two to three times a month and that he and Saddler had traveled to Chicago together once or twice to purchase cocaine from their source. Davis also saw Saddler in possession of three of the firearms, including one of the 9mm Bryco Jennings pistols, at different times when they sat out in front of the 1264 West Mullan Avenue residence and stated that he, Earsery and Saddler "would probably be the main ones strapped, ready, whatever."

Finally, Buls testified that both Earsery and Saddler had keys to the Hartman Street residence because they kept drugs and money at the house and that Saddler was the main person to use the basement. Although she never saw anyone sell drugs out

of the Hartman Street residence, she did see Saddler, Earsery, Wade and Latiker with drugs at this location. Specifically, she observed Saddler weighing crack cocaine on a scale in the kitchen.

At the close of the evidence, Saddler moved for judgment of acquittal, arguing that the evidence was insufficient to establish any agreement to distribute drugs or to possess or use firearms, a necessary element of both conspiracy charges. The district court denied Saddler's motion. In submitting the case to the jury, the district court instructed the jury that "crack cocaine and a mixture or substance containing a detectable amount of cocaine base refer to the same substance." During deliberations, the jury asked the district court for "a clarification on the differences between 'crack' cocaine and cocaine." The district court instructed the jury to recall the evidence. Subsequently, the jury returned a guilty verdict against Saddler on all counts.

At sentencing, the district court determined that Saddler's base offense level for the drug conspiracy and possession convictions was 37 based on the quantity of crack cocaine, cocaine and marijuana involved in the drug conspiracy and a one-level increase for drug sales within 1000 feet of a protected location pursuant to the United States Sentencing Guidelines § 2D1.2(a)(2). The district court also imposed a two-level upward adjustment pursuant to U.S.S.G. § 2D1.1(b)(1) because a dangerous weapon was possessed. As for the firearm conspiracy conviction, the district court determined that it was closely related to drug conspiracy and possession convictions and grouped them together under the same adjusted offense level. Therefore, Saddler's advisory sentencing guidelines range for the drug convictions and firearm conspiracy convictions, based on a total offense level of 39 and a criminal history category of I, was 262 to 327 months' imprisonment. On the firearm possession conviction, 18 U.S.C. § 924(c)(1)(A)(i) required a mandatory consecutive 60-month sentence.

Saddler requested a downward departure, arguing that he was a minimal participant in the conspiracy, lacked a criminal history, and suffered from Bell's palsy. The district court stated:

> I am aware that I have the power to depart whenever a case falls outside the Heartland of cases. And this one does not.
>
> The Court finds that there is nothing unusual about this case that has not already been figured into the computation of the advisory guidelines.
>
> For example, . . . the fact that Defendant had no criminal history has been taken into consideration in the computation of the advisory guidelines sentence, and, therefore, the Court could not use that as a basis for a departure even if I wanted to.
>
> There is nothing in the record here that, in my opinion, argues for a role in the offense. Whether it's argued as a departure or an adjustment to the adjusted offense level, the Court finds that Defendant had not met his burden to prove a minor role in the offense.
>
> As far as his medical condition, Bell's palsy, there's nothing that suggests that the defendant's condition could not be handled in the Bureau of Prisons and treated there.
>
> He will suffer no adverse consequences that are any more substantial than any other prisoner by virtue of having this condition.
>
> So the Court, recognizing its power to depart downward, declines to do so and states that were the Court to depart downward, it would run afoul of the statutory factors at 18 United States Code Section 3553(a).

Sentencing Tr. at 12-13. The district court then considered the § 3553(a) factors and sentenced Saddler to 262 months' imprisonment with a consecutive 60-month term, for a total sentence of 322 months' imprisonment.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Saddler argues that the district court erred by denying his motion for judgment of acquittal because there was insufficient evidence to support the drug conspiracy, firearm possession and firearm conspiracy convictions. We have recently summarized the standard of review for such arguments:

> We review de novo a district court's denial of a motion for judgment of acquittal. We view the evidence in the light most favorable to the jury's verdict and we draw all reasonable inferences in the government's favor[.] We will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt. Both direct and circumstantial evidence can be the basis of a conviction. Furthermore, we must not weigh the evidence or assess the credibility of witnesses.

*United States v. Garcia-Hernadez*, 530 F.3d 657, 661 (8th Cir. 2008) (internal quotations and citations omitted) (alteration omitted).

### 1. Drug Conspiracy

"To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *Id.* (quoting *United States v. Rolon-Ramos*, 502 F.3d 750, 754 (8th Cir. 2007)). "An agreement to join a conspiracy need not be explicit but may be inferred from the facts and circumstances of the case." *Id.* (quoting *United States v. Rodriguez-Mendez*, 336 F.3d 692, 695 (8th Cir. 2003)).

Saddler argues that the Government failed to present evidence showing an agreement between him and Earsery, Davis, Leaks, Latiker, Wade, Richardson or Jackson to distribute crack cocaine, cocaine and marijuana. Rather, Saddler suggests that they each worked separately selling drugs out of the same houses. However, after reviewing the evidence presented to the jury, we conclude that the district court did not err by denying Saddler's motion for judgment of acquittal with respect to his drug conspiracy conviction.

Davis testified that he, Earsery and Saddler had the same source for controlled substances in Chicago and that he and Saddler traveled to Chicago together to obtain cocaine from their source and transported the cocaine back to Waterloo. Earsery testified that all of the residents, including Saddler, sold crack cocaine out of the 1264 West Mullan Avenue and the 630 West Mullan Avenue residences. Earsery indicated that they shared customers and provided each other drugs when needed to complete a sale. Two of Saddler's customers testified that they purchased drugs not only from Saddler but also from others at the 630 West Mullan Avenue residence.

Additionally, the evidence presented to the jury ties Saddler to the 112 Hartman Street residence, where police seized large quantities of marijuana, cocaine, crack cocaine, money, packaging materials and a scale. *See United States v. Mendoza-Gonzalez*, 363 F.3d 788, 796 (8th Cir. 2004) (holding that a jury could reasonably infer that a conspiracy existed where evidence showed it was unlikely that the defendant grew, processed, packaged and loaded large quantities of drugs without assistance or that the drugs were for personal use). Earsery testified that Saddler, along with Richardson, Latiker, Wade and Jackson, had access to the basement at the Hartman residence to store and retrieve their belongings. In fact, Saddler's personal documents were also located in the basement of the Hartman Street residence near large quantities of drugs. Buls testified that Saddler had a key to the residence and was the main person to use the basement. She had also observed Saddler in the kitchen weighing crack cocaine on the scale. Because the alleged co-conspirators had

the same source and traveled together to obtain drugs from that source, possessed large quantities of drugs, had a common storage area and unfettered access to it, and shared customers and drugs, a jury could reasonably infer that Saddler entered into an agreement with Earsery, Davis, Leaks, Latiker, Wade, Richardson or Jackson to distribute drugs.

Saddler challenges the testimony of Earsery, Davis and Buls because these individuals were testifying in an attempt to avoid or reduce their own criminal sentence. However, our role is not to assess the credibility of the witnesses. *See Garcia-Hernandez*, 530 F.3d at 662. Rather, the jury assessed the witnesses' credibility and reasonably determined that Saddler was part of a crack cocaine, cocaine, and marijuana distribution conspiracy.

## 2. Firearm Possession and Conspiracy Convictions

The district court also did not err in denying Saddler's motion for judgment of acquittal with respect to his firearm possession conviction. "To establish that a defendant possessed a firearm in violation of § 924(c), the Government must prove that (1) he committed a drug trafficking crime, and (2) he possessed a firearm in furtherance of that crime." *Id.* (internal quotation omitted). Because we have already held that sufficient evidence supported Saddler's drug distribution conspiracy conviction and because Saddler does not challenge his possession with intent to distribute cocaine and cocaine base convictions, we turn to the second element, whether sufficient evidence supports the jury's conclusion that Saddler possessed a firearm in furtherance of that conspiracy.

"Possession may be actual or constructive and need not be exclusive." *United States v. Williams*, 512 F.3d 1040, 1044 (8th Cir. 2008), *cert. denied*, --- U.S. ---, 128 S. Ct. 2918 (June 9, 2008). "Proof of constructive possession requires evidence that a defendant knowingly has the power and intention to exercise control over the

firearm . . . ." *Id.* Such possession may be established by showing the defendant had dominion over the premises where the firearm is kept. *United States v. Tindall*, 455 F.3d 885, 887 (8th Cir. 2006). The Government proved that Saddler had both actual and constructive possession of the firearms. Davis and Earsery testified that they observed Saddler in actual possession of the firearms, specifically one of the 9mm Bryco Jennings pistols. Buls testified that Saddler had a key to the Hartman residence and that Saddler was the main person to use the basement where the firearms were stored; the police found Saddler's personal documents near the guns; and Earsery testified that Saddler had access to the firearms. Because of Saddler's dominion over the basement, he also had constructive possession of those firearms.

Nonetheless, Saddler argues that there is no evidence of a nexus between his possession of a firearm and the drug trafficking convictions. *See United States v. Thorpe*, 447 F.3d 565, 568 (8th Cir. 2006) ("To convict a defendant of possessing a firearm in furtherance of a drug trafficking crime, the jury must have found a nexus between the defendant's possession of the firearm and the drug offense."). "[W]e have repeatedly held that a jury may find the requisite nexus when a firearm is discovered in close proximity with drugs so as to support an inference that the firearm is for the protection of the drugs." *Williams*, 512 F.3d at 1044. Here, the firearms were loaded and kept in the basement of the Hartman Street residence. Thus, the firearms were quickly accessible and in close proximity to 701.8 grams of marijuana and 80.26 grams of cocaine, to a safe that contained an additional 122.56 grams of cocaine, 65.42 grams of crack cocaine and $21,514.42 in cash, and to the other parts of the house that contained 2212 grams of marijuana, 597.74 grams of powder cocaine and 217.1 grams of crack cocaine. *See United States v. Close*, 518 F.3d 617, 619 (8th Cir. 2008) (holding that a quickly accessible firearm in close proximity to drugs helps establish a nexus between the defendant's possession of the firearm and the drug crime). Additionally, Davis testified that he had seen Saddler in possession of three of the firearms, including one of the 9mm Bryco Jennings pistols, at different times when they sat out in front of the 1264 West Mullan Avenue residence, where they sold

crack cocaine. Davis also testified that Davis, Earsery and Saddler "would probably be the main ones strapped, ready, whatever." Based on this testimony, the jury could reasonably infer that Saddler possessed the firearms to protect, and thereby further, the drug distribution operation. *See United States v. Smith*, --- F.3d ---, 2008 WL 2906537, at *2 (July 30, 2008) ("We recognize the role of firearms in protecting drugs, drug proceeds, and drug transactions."). Therefore, the evidence was sufficient to support Saddler's conviction of possessing a firearm in furtherance of a drug trafficking crime.

Finally, the district court did not err in denying Saddler's motion for judgment of acquittal with respect to his firearm conspiracy conviction. To establish that a defendant conspired to use, carry or possess a firearm in violation of § 924(c) and (o), the Government must prove: (1) that there was a conspiracy, i.e., an agreement either to use or carry a firearm during and in relation to a drug trafficking crime or to possess a firearm in furtherance of a drug trafficking crime; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy. *See* 18 U.S.C. § 924(c), (o); *cf. Garcia-Hernandez*, 530 F.3d at 661; *United States v. Cannon*, 475 F.3d 1013, 1020 (8th Cir. 2007). Saddler argues that no evidence was presented showing an agreement between him and the alleged co-conspirators. However, Earsery testified that the firearms were "house" guns and that Earsery, Saddler, Latiker, Wade, Leaks and Jackson all had access to the guns and all sold drugs out of the West Mullan Avenue residences. Davis testified that he, Earsery and Saddler "would probably be the main ones strapped, ready, whatever." From this evidence and the evidence previously detailed, we conclude that a jury could reasonably infer that Saddler had implicitly agreed to use or carry a firearm during and in relation to a drug trafficking crime or to possess a firearm in furtherance of a drug trafficking crime.

**B.** **Sentencing Issues**

Saddler contends that his sentence was both procedurally unsound and substantively unreasonable. "We review a defendant's sentence for both the procedural soundness of the district court's decision and the substantive reasonableness of the sentence imposed." *United States v. Tabor*, 531 F.3d 688, 691 (8th Cir. 2008) (internal quotation omitted). In reviewing a challenge to a sentence, we must

> first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence–including an explanation for any deviation from the Guidelines range. Assuming that the district court's sentencing decision is procedurally sound, [we] should then consider the substantive reasonableness of the sentence . . . .

*Gall v. United States*, 552 U.S. ---, 128 S. Ct. 586, 597 (2007). "Substantive sentencing acts include, most importantly, how a district court balances the § 3553(a) sentencing factors to derive its sentence." *Tabor*, 531 F.3d at 691.

Although Saddler does not challenge the calculation of the advisory sentencing guidelines range, he does argue that the district court erred in denying his request for a downward departure. However, "the denial of a downward departure is unreviewable unless the district court had an unconstitutional motive or an erroneous belief that it was without the authority to grant the departure." *United States v. Cole*, 525 F.3d 656, 660 (8th Cir. 2008). Saddler does not argue that the district court had an unconstitutional motive, and the district court recognized its authority to depart in denying Saddler's request: "I am aware that I have the power to depart whenever a case falls outside the Heartland of cases. And this one does not." Thus, we have no

authority to review the district court's denial of Saddler's request for a downward departure.

Saddler also argues that the district court improperly applied a presumption of reasonableness to the advisory sentencing guidelines range, contrary to the principles announced in *Rita v. United States*, 551 U.S. ---, 127 S. Ct. 2456 (2007), because the district court claimed that Saddler's case did not "fall outside the Heartland of cases." We have held that *Rita* prohibits the district court from "believ[ing] that it was bound . . . to require a certain amount or kind of evidence to vary from the Guidelines recommendation, even though its own application of the § 3553(a) factors would result in a different outcome." *United States v. Robinson*, 516 F.3d 716, 718 (8th Cir. 2008). However, "*Rita* affords a district court the option to rest [its] decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case if the court finds that the case before it is typical." *Id.* (internal quotation omitted) (alteration in original). Here, the district court stated that this case did not fall outside the heartland of cases, "that there [was] nothing unusual about this case that has not already been figured into the computation of the advisory guidelines," and "that were the Court to depart downward, it would run afoul of the statutory factors at 18 United States Code Section 3553(a)." Additionally, *Rita* was issued approximately two weeks before the sentencing hearing. "*Booker*[ and] *Rita* . . . were hardly obscure decisions likely to have been overlooked by federal sentencing judges . . . ." *United States v. Gray*, --- F.3d ---, 2008 WL 2777408, at *1 (8th Cir. July 18, 2008). "Trial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled on other grounds*, *Ring v. Arizona*, 536 U.S. 584, 609 (2002). In this case, the district court recognized that it "is required to consider all of the statutory factors at 18 United States Code, Section 3553(a) unless the factor clearly does not apply." Sentencing Tr. at 17. Thus, we believe the district court was fully aware of its ability to vary, did not apply a presumption of reasonableness to the advisory sentencing guidelines range, and simply found

-13-

Saddler's case typical such that it did not warrant a lower sentence than that recommended by the guidelines. *See Robinson*, 516 F.3d at 718.

Saddler next argues that the sentence was substantively unreasonable. "We review the reasonableness of the district court's sentence[] for abuse of discretion." *United States v. Canania*, --- F.3d ---, 2008 WL 2717675, at \*7 (8th Cir. July 14, 2008) (citing *Gall*, 128 S. Ct. at 597). "A [district] court abuses its discretion and imposes an unreasonable sentence when it 'fails to consider a relevant factor that should have received significant weight; . . . gives significant weight to an improper or irrelevant factor; or . . . considers only the appropriate factors but in weighing those factors commits a clear error of judgment.'" *United States v. Mousseau*, 517 F.3d 1044, 1048-49 (8th Cir. 2008) (quoting *United States v. Rouillard*, 474 F.3d 551, 556 (8th Cir. 2007)). On appellate review, "[s]entences within the Guidelines are presumptively reasonable." *United States v. Starr*, --- F.3d ---, 2008 WL 2485178, at \*14 (8th Cir. June 23, 2008).

Saddler was sentenced to 322 months' imprisonment, consisting of a mandatory consecutive 60-month sentence added to a 262-month sentence, which was at the bottom of the undisputed advisory sentencing guidelines range of 262 to 327 months' imprisonment. The district court considered the § 3553(a) factors and provided sufficient reasons to satisfy us that it "has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *See Rita*, 127 S. Ct. at 2468.

Nonetheless, Saddler claims that the district court failed to consider two relevant factors that should have received significant weight: Saddler's health and the "Draconian penalties" associated with crack cocaine. However, the district court did indeed consider Saddler's medical condition and determined that the Bureau of Prisons could handle and treat his Bell's palsy. As for the "Draconian penalties" argument, because Saddler did not raise this issue with the district court, we review

-14-

it for plain error. *See United States v. M.R.M.*, 513 F.3d 866, 870 (8th Cir. 2008), *petition for cert. filed*, --- U.S.L.W. --- (U.S. June 17, 2008) (No. 07-11488). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights. Further the error will not be corrected unless it seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Roundtree*, --- F.3d ---, 2008 WL 2831844, at *1 (8th Cir. July 24, 2008) (internal citation and quotation omitted); *accord United States v. Olano*, 507 U.S. 725, 733-736 (1993).

We recognize that during the pendency of Saddler's appeal, the United States Supreme Court decided *Kimbrough v. United States*, 552 U.S. ---, 128 S. Ct. 558 (2007), which held that the district court may consider as a sentencing factor the disparity created by the 100:1 crack-to-powder cocaine quantity ratio as set forth in the sentencing guidelines. However, we cannot say that the district court committed error, much less plain error, because we have previously held that a district court does not abuse its discretion when it fails to consider the crack/powder sentencing disparity. *See United States v. King*, 518 F.3d 571, 576 (8th Cir. 2008); *see also United States v. Roberson*, 517 F.3d 990, 995 (8th Cir. 2008) ("We do not believe, though, that *Kimbrough* means that a district court now acts unreasonably, abuses its discretion, or otherwise commits error if it does not consider the crack/powder sentencing disparity."); *United States v. Johnson*, 517 F.3d 1020, 1024 (8th Cir. 2008) ("Although *Kimbrough* empowers a district court to consider the disparity between guideline sentences for powder cocaine and crack, it does not require it to do so."). Therefore, the district court did not abuse its discretion in sentencing Saddler to 322 months' imprisonment.

## C. Sixth Amendment Violation

Finally, Saddler argues that the district court violated his Sixth Amendment rights because the jury did not determine a key fact that increased the statutory

maximum penalty he faced. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). Because Saddler did not raise this constitutional challenge at sentencing, we again review for plain error. *See United States v. Conelly*, 451 F.3d 942, 944 (8th Cir. 2006).

Saddler was convicted of conspiracy to distribute and possession with the intent to distribute fifty grams or more of a mixture or substance containing a detectable amount of "cocaine base" in violation of 21 U.S.C. § 841(b)(1)(A). Saddler contends that to be convicted of a § 841(b)(1)(A) offense, the jury must determine that the offense involved "crack cocaine" rather than some other form of "cocaine base." *See United States v. Edwards*, 397 F.3d 570, 571-77 (7th Cir. 2005) (holding that a § 841(b)(1)(A)(iii) conviction requires proof of crack cocaine). According to Saddler, if the jury determines that the offense involved "crack cocaine," Saddler could be sentenced to a maximum of life imprisonment as prescribed by § 841(b)(1)(A); however, if the jury determines that the offense involved some other form of "cocaine base," he could only be sentenced to a maximum of twenty years as prescribed by 21 U.S.C. § 841(b)(1)(C). Saddler argues that the district court could not have constitutionally sentenced him above twenty years' imprisonment for these convictions because the jury never determined whether the "cocaine base" involved in the convictions was "crack cocaine."

We conclude that the district court did not commit error, much less plain error, because the jury determined that the offenses involved "crack cocaine." The district court instructed the jury that "crack cocaine and a mixture or substance containing a detectable amount of cocaine base refer to the same substance." This instruction was clear and followed our circuit's precedent that "cocaine base" and "crack cocaine" are synonymous. *See United States v. Robinson*, 455 F.3d 832, 834 n.2 (8th Cir. 2006) ("'[C]ocaine base' in [§ 841] is synonymous with 'crack cocaine.'"); *see also*

U.S.S.G. § 2D1.1(c), Note D (defining "cocaine base" as "crack cocaine"). When the jury asked for "a clarification on the differences between 'crack' cocaine and cocaine," the district court informed the jury to recall the evidence. The jury then determined, and the evidence sufficiently supports, that Saddler conspired to distribute fifty grams or more of crack cocaine and possessed fifty grams or more of crack cocaine with the intent to distribute it.

Even had there been an error that was plain, we would conclude that Saddler's substantial rights were not affected. Saddler was convicted for two separate offenses involving cocaine base: conspiracy to distribute fifty grams or more of cocaine base and possession with the intent to distribute fifty grams or more of cocaine base. Even if Saddler's argument were entirely correct, he nonetheless received a sentence that is well within the statutory maximum available to the district court. Because each offense would have a statutory maximum of twenty years' imprisonment and because a district court may "run sentences from multiple counts consecutively, rather than concurrently, if the Guideline sentence exceeds the statutory maximum sentence for each count," the statutory maximum for both offenses if run consecutively was forty years' imprisonment. *See United States v. Zimmer*, 299 F.3d 710, 725 (8th Cir. 2002) (quotation omitted); U.S.S.G. § 5G1.2(d). Saddler's substantial rights were not affected because his sentence of 262 months' imprisonment for his conspiracy to distribute fifty grams or more of cocaine base and his possession with the intent to distribute fifty grams or more of cocaine base convictions was less than forty years. Therefore, the district court did not violate Saddler's Sixth Amendment rights by imposing a sentence greater than twenty years' imprisonment.

## III.  CONCLUSION

Accordingly, we affirm Saddler's convictions and sentence.[2]

_____

---

[2]We do recognize that since the pendency of Saddler's appeal, the United States Sentencing Commission adopted Amendment 706, which reduced the crack/powder cocaine sentencing ratio in § 2D1.1(c).  *See* United States Sentencing Guidelines Manual (2007), App. C, Amend. 706.  The Sentencing Commission has given retroactive effect to Amendment 706. *See* 18 U.S.C. § 3582(c)(2).  Saddler may move the district court for a reduced sentence in light of Amendment 706, and the resolution of this appeal does not prejudice Saddler's ability to make such a motion.  *See King*, 518 F.3d at 576-77.