# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2387

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff - Appellee,　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Leevern Johnson,　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Defendant - Appellant.　　　*

_____

Submitted: December 11, 2006
Filed: January 22, 2007

_____

Before BYE, COLLOTON, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Leevern Johnson was convicted of conspiring to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count One); possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count Two); and being a domestic abuser in possession of firearms in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2) (Count Three). He pleaded guilty to Counts One and Three and was found guilty by a jury as to Count Two. He appeals both his conviction on Count Two and the district court's[1] sentence. We affirm.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

# I

On April 25, 2005, Leevern Johnson was arrested for providing false information to officers during a traffic stop on Interstate 80 in Cass County, Iowa. During the stop, officers reviewed a videotape of the stop and heard one passenger ask another passenger, Dawn Heidzig, if she "still had it." Upon questioning, Heidzig admitted she had concealed a bag of crack cocaine in her pants. Officers then seized six ounces of crack cocaine from Heidzig. The next day, Johnson admitted, in a post-Miranda interview, he had traveled from his home in Sioux City, Iowa, to Chicago, Illinois, to obtain crack cocaine for a third party in Sioux City and he had given the crack cocaine to Heidzig to hide in her pants during the traffic stop. A subsequent search of Johnson's one-bedroom apartment uncovered two assault rifles, a bipod for the assault rifles, a loaded twelve-gauge shotgun, ammunition for both types of firearms and two digital gram scales. Officers testified at trial regarding the location of the scales, the bipod and two of the firearms. Officer Brian Clausen testified he found a grey digital gram scale and a bipod in a closet of the residence. Officer Dane Wagner testified the shotgun and one assault rifle were found underneath a futon-style bed in the sole bedroom of the residence. The assault rifle was cased and the shotgun was uncased. Officer Brad Downing testified he recovered a black digital gram scale from a drawer in the apartment. He also recovered a box of shotgun shells from the residence. In addition, Officer Downing testified he received both a letter and a telephone call from Johnson after the search in which Johnson claimed ownership of the seized firearms.

At trial, Heidzig, Johnson's indicted co-conspirator, provided the bulk of the testimony. She testified she had dated Johnson for approximately two months prior to his arrest and was familiar with his apartment as she spent time there during the day and slept there approximately three to four nights each week. She identified the two scales found in the apartment and testified she had witnessed Johnson use the scales to weigh crack cocaine and marijuana "numerous times." She also testified about the

trip from Sioux City to Chicago during which they were arrested. She described how she had held a bag of money for Johnson when they left Sioux City. Once they arrived in Chicago, Johnson took the money, left the vehicle and entered another vehicle parked across the street. He returned to his vehicle without the money but with a bag of crack cocaine. They subsequently "gassed up" and headed back to Sioux City. Heidzig testified they were en route to Johnson's apartment with the crack cocaine when they were stopped. She then testified about her familiarity with the firearms kept in Johnson's residence. She testified she had seen the shotgun in the sole bedroom of Johnson's apartment and it was kept either under the pillows on top of the futon-style bed or against the wall underneath the bed. She further testified she spoke with Johnson about her fear of the firearms and at one point asked him why he kept guns in the apartment. She claimed he responded "if anything would ever happen he'd shoot through the door and run." Finally she testified people came to the apartment daily, at "all hours of the day" to purchase drugs and drug sales from the apartment were "nonstop." On cross examination, Heidzig testified she cooperated with the government by giving them information and obtained safety-valve relief as a result. She testified she used methamphetamine habitually, marijuana occasionally, and had tried crack cocaine in the past. She further testified, when people came into the apartment to purchase drugs, they did so through both the back and front doors. She explained how, due to the location of the doors, if the bedroom and back doors were open at the same time they would touch each other. In response to a question posed by defense counsel about other trips with Johnson to Chicago or Kansas City, Heidzig testified she did not know if he brought a firearm with him.

At sentencing, the district court denied Johnson's request for both a two-level minor role reduction and a two-level acceptance of responsibility reduction. The

district court sentenced him to 295 months of imprisonment—the lowest possible sentence advised by the Sentencing Guidelines (Guidelines or U.S.S.G.).[2]

## II

Johnson raises several issues on appeal, which we consider in turn.

### A

Johnson first contends the evidence was insufficient to support his conviction for possession of a firearm in furtherance of a drug crime. A challenge to the sufficiency of the evidence is reviewed de novo, with the evidence viewed in the light most favorable to the government and accepting all reasonable inferences supporting the jury's verdict. United States v. Katz, 445 F.3d 1023, 1028 (8th Cir. 2006). "It is well-established that the uncorroborated testimony of an accomplice is sufficient to sustain a conviction if the testimony is not otherwise incredible or unsubstantial on its face." United States v. Lee, 451 F.3d 914, 916 (8th Cir. 2006) (quoting United States v. Vaughn, 410 F.3d 1002, 1004 (8th Cir. 2005)).

Johnson claims Heidzig's testimony does not deserve credit because she was an indicted co-conspirator. He argues her testimony is the only evidence linking the firearms found in his residence with his drug trafficking activities, which he limits to the single trip to Chicago when he was stopped. As noted above, at Johnson's trial, Heidzig testified about nonstop drug sales from Johnson's apartment, numerous occasions when Heidzig observed Johnson use the seized scales to weigh drugs and Johnson's statement he owned the firearms so he could "shoot through the door and run" if anything happened. Johnson argues Heidzig's testimony was incredible and

---

[2] On Counts One and Three, the Guideline range was 235 to 293 months. On Count Two, Johnson faced a mandatory 60 month consecutive sentence. See U.S.S.G. § 2K2.4 (2005); 18 U.S.C. § 924(c)(1)(A)(i), (D).

unsubstantial on its face because the government could not produce evidence to substantiate her story. Essentially, he argues Heidzig's testimony is incredible because it is uncorroborated, and even if it is true, there is insufficient evidence to support his conviction as Heidzig never saw Johnson shoot or handle a gun. We disagree.

To convict a defendant for possession of a firearm in furtherance of a drug trafficking crime the jury must find a nexus between the defendant's possession of the firearm and the drug offense. United States v. Thorpe, 447 F.3d 565, 568 (8th Cir. 2006). "[S]imultaneous possession of drugs and a firearm is not alone sufficient to support a conviction." United States v. Hamilton, 332 F.3d 1144, 1150 (8th Cir. 2003). "Instead, the jury must be able to infer that the defendant's possession of the firearm facilitated the drug crime, through evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during drug transactions." United States v. Sanchez-Garcia, 461 F.3d 939, 946-47 (8th Cir. 2006). In Sanchez-Garcia, we found a sufficient nexus where a loaded handgun was found in the sole bedroom of the defendant's apartment directly adjacent to the kitchen where law enforcement found significant quantities of methamphetamine. Id. at 946. We held: "the jury could have reasonably concluded that Sanchez-Garcia kept the weapon readily accessible to protect his drugs and his drug trafficking activities, thereby facilitating the charged drug crime." Id. at 947.

Here, the evidence of a nexus is not as strong as in Sanchez-Garcia, as no drugs were found in the apartment. Heidzig's testimony, however, places drugs and drug sales in the kitchen and living room. It also places drug purchasers by the back door, just a few feet from the bedroom. Heidzig testified Johnson's small one-bedroom apartment was used constantly for drug sales and Johnson told her the guns were for protection. Her testimony was credited by the jury and on such issues of credibility we defer to the jury's determinations. Thorpe, 447 F.3d at 568. There is nothing to suggest Heidzig's testimony was incredible or unsubstantial on its face. Furthermore,

her testimony was corroborated by the physical evidence found in Johnson's residence. After careful review of the record, we conclude the jury could have reasonably concluded he kept the loaded shotgun readily accessible to protect his drugs and drug trafficking activities, thereby facilitating the drug conspiracy.

B

Johnson next argues the district court erred in denying him a minor-role reduction at sentencing. We review the district court's denial of such a reduction for clear error. United States v. Lopez-Vargas, 457 F.3d 828, 831 (8th Cir. 2006). The defendant bears the burden of proving a minor-role reduction applies. United States v. Carasa-Vargas, 420 F.3d 733, 737 (8th Cir. 2005). Under the Guidelines, a defendant is eligible for a two-level reduction if he was a minor participant in the criminal offense. U.S.S.G. § 3B1.2(b). A "minor participant" is someone "who is less culpable than most other participants, but whose role could not be described as minimal." Id. cmt. n.5. "Even a defendant decidedly less culpable than his co-defendants, however, is not entitled to a reduction if he was deeply involved in the offense of conviction." United States v. Bustos-Torres, 396 F.3d 935, 948 (8th Cir. 2005).

Johnson argues he was a minor participant in the drug conspiracy as Heidzig was in possession of the crack cocaine when they were arrested, the drug transactions described in Heidzig's "uncorroborated" testimony occurred during a short period of time, and he was a mere drug courier for a third party. The district court relied on Heidzig's trial testimony, finding he was much more involved in the drug business than Heidzig, he dealt drugs from his apartment "almost nonstop," and Heidzig was "more along for the ride and kind of a girlfriend carrying the money and dope for him." The district court ultimately found he was "deeply involved" in the drug conspiracy and was not less culpable than Heidzig. Here, the record supports the district court's findings. He played a much greater role in the conspiracy than Heidzig

-6-

and was also "deeply involved" in the conspiracy. Accordingly, the district court's denial of his request for a minor-role reduction does not constitute clear error.

C

Johnson next contends the district court erred in denying his request for a two-level acceptance of responsibility reduction. This court reviews a district court's denial of such a reduction for clear error. United States. v. Kiel, 454 F.3d 819, 824 (8th Cir. 2006). The Guidelines suggest several factors a district court may consider in deciding whether to grant an acceptance of responsibility reduction including: whether the defendant truthfully admitted the conduct comprising his offense; whether he voluntarily surrendered to authorities promptly after the commission of the offense; and the timeliness of his conduct manifesting acceptance of responsibility. U.S.S.G. § 3E1.1 cmt. n.1. Our analysis changes when a defendant has received an obstruction of justice enhancement under U.S.S.G. § 3C1.1. While conduct resulting in an obstruction enhancement ordinarily indicates the defendant has not accepted responsibility, there may be "extraordinary cases" where both the obstruction enhancement and acceptance reduction apply. Id. cmt. n.4. We apply a "totality of the circumstances" analysis to determine whether a case is an "extraordinary case" for purposes of applying the exception. United States v. Honken, 184 F.3d 961, 968 (8th Cir. 1999). We must consider whether the obstructive conduct was an isolated incident, whether it was voluntarily or involuntarily terminated, whether the defendant admitted and recanted his obstructive conduct, and to what degree he accepted responsibility and aided the government after his obstructive conduct. Id. at 968-69. As we explained in Honken, "extraordinary cases" under this exception are "extremely rare and highly exceptional." Id. at 970. It is not generally extraordinary when a defendant "merely cease[s] obstructive conduct." Id. Instead, a defendant must earn his adjustment by performing positive actions which ameliorate his negative ones. Id. at 973.

Here, Johnson cooperated with officers immediately after his arrest. After this initial cooperation, however, he failed to provide two urine samples during pretrial release, fled, failed to attend his change of plea hearing, was apprehended involuntarily by officers weeks later, and, after the government filed a superceding indictment, failed to plead guilty to one of the resulting firearm offenses. He argues he "tried to plead guilty" to Count Two of the indictment but was unable to because he could not admit his possession of the firearms was "in furtherance" of the drug trafficking offense. An acceptance of responsibility reduction is generally not appropriate where the defendant fails to plead guilty and puts the government to its burden of proof at trial. Kiel, 454 F.3d at 824. It is true he pleaded guilty to Counts One and Three of the indictment subsequent to his post flight arrest. He argues this is enough to counter his negative act of flight. A review of the sentencing transcript, however, shows the district court credited him for these actions by sentencing him to the bottom of the Guidelines range. The district court found he did not qualify for the reduction largely because of the obstruction enhancement. After recapture, the district court noted Johnson admitted "only what he can't deny"—he was caught with crack cocaine and was a convicted domestic abuser in possession of a firearm. The district court further noted, crediting Heidzig's testimony about this conduct, that he refused to admit he sold drugs from his residence. The court ultimately found his incomplete acceptance of responsibility did not counter his negative obstructive behavior. Based on the district court's thorough analysis, we cannot say the court's denial of an acceptance of responsibility reduction was clearly erroneous.

D

Finally, Johnson contends his 295-month sentence is unreasonable as the district court improperly declined to vary from the Guidelines range and imposed his sentence using the 100 to one crack-to-powder cocaine ratio. Neither of these claims has merit. After Booker, the ultimate sentence imposed by the district court is reviewed for reasonableness, which is "akin to our traditional review for abuse of

-8-

discretion." United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006). He argues the district court gave undue weight to the Guidelines, refusing to vary therefrom based on the 18 U.S.C. § 3553(a) factors. At sentencing he argued for a variance based on his childhood and his "relatively clean" criminal history. The district court found this case was "in the heartland of cases" and rejected his request for a variance because "[t]his case and this defendant are not unique." The district court expressly reviewed each of the factors in § 3553(a) noting he had a "significant criminal history," had a "propensity for violence against others," and was "strictly a businessman when it comes to crack cocaine" as he was a seller and not a user. Nevertheless, the district court imposed a sentence at the very bottom of the Guidelines range. Such a sentence is presumptively reasonable. United States v. Lincoln, 413 F.3d 716, 717 (8th Cir.), cert. denied, 126 S.Ct. 840 (2005); accord United States v. Rita, 177 F. App'x 357, 358 (4th Cir. 2006) (unpublished per curiam) (noting a sentence imposed within a properly calculated Guidelines range is presumptively reasonable), cert. granted, 127 S.Ct. 551 (U.S. Nov. 3, 2006) (No. 06-5754). In addition, he argues his sentence is unreasonable because the district court refused to take into account the great disparity between the penalties for distributing crack versus powder cocaine under the Guidelines. As we have recently confirmed, however, "neither Booker nor § 3553(a) authorizes district courts to reject" the crack-to-powder cocaine quantity ratio mandated by Congress and reflected in the Guidelines. United States v. Spears, 469 F.3d 1166, 1176 (8th Cir. 2006) (en banc). Having carefully considered the sentencing record, we conclude the district court's decision to deny a variance and the resulting 295-month sentence are reasonable.

III

For the foregoing reasons, we affirm the district court.

_____