# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3650

_____

United States of America,             *

                             *

        Appellee,       *

                             *   Appeal from the United States

    v.                  *   District Court for the

                             *   District of Nebraska.

Antwain S. Davis, also known as   *

Twan,                   *

                             *

        Appellant.     *

_____

Submitted: May 15, 2008
Filed: August 14, 2008

_____

Before RILEY, HANSEN, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Antwain Davis appeals from the sentence that the district court imposed on him after he pleaded guilty to possessing five grams or more of cocaine base (crack) with intent to distribute it, *see* 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii). We vacate the sentence and remand for resentencing.

At sentencing, the court determined that Mr. Davis's guideline sentencing range was 57 to 71 months and, after considering the "factors" in 18 U.S.C. § 3553(a), sentenced him to 48 months in prison. On appeal, Mr. Davis contends that the district court erroneously believed that it was required to follow United States Sentencing

Guidelines that give crack cocaine offenders significantly higher prison sentences than powder cocaine offenders, that the court abused its discretion by failing to give weight to his family circumstances, and that his sentence is unreasonable because the court failed to take into account the appropriate statutory considerations.

## I.

Section 3553(a) provides that "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in that statute. *Id.* In his brief, Mr. Davis asserts that the district court believed that "the Guidelines' crack/powder sentencing ratio was a Congressional mandate it was required to follow," and that the court therefore "adhered to" the guideline sentence for crack despite its belief that such a sentence was "greater than necessary," 18 U.S.C. § 3553(a).

The crack/powder cocaine sentencing ratio that Mr. Davis contends was treated as a "Congressional mandate" originated in 21 U.S.C. § 841(b), the statute that sets minimum terms for drug trafficking crimes. Congress used a 100-to-1 drug quantity ratio to set minimum terms for crack cocaine and powder cocaine: Section 841(b) provides the same minimum sentence for a defendant convicted of a crack offense as a defendant convicted of an offense involving one hundred times as much powder cocaine. *Id.*; *Kimbrough v. United States*, 128 S. Ct. 558, 566-67 (2007). The sentencing commission followed suit by using a 100-to-1 ratio to set basic offense levels for crack and powder cocaine offenses; the guidelines subjected "a drug trafficker dealing in crack cocaine ... to the same sentence as one dealing in 100 times more powder cocaine." *Id.* at 567, 564; *see also* U.S.S.G. § 2D1.1 (2004). Based on these quantities, prison terms for crack offenses were three to six times higher than those for powder cocaine. *Kimbrough*, 128 S. Ct. at 566.

At the time that Mr. Davis was sentenced, our circuit as well as quite a few others had held that, despite the advisory nature of the guidelines, a "sentencing court

may not impose a sentence outside the Guidelines range based on its disagreement with the crack/powder disparity." *Kimbrough*, 128 S. Ct. at 566 n.4. Generally, these courts reasoned that the guidelines were based on § 841(b), which, in turn, reflected congressional policy regarding the relative seriousness of crack and powder cocaine offenses that was binding on the courts. Although the district court was not required to impose the § 841(b) five-year minimum sentence because Mr. Davis qualified for safety-valve relief, *see* 18 U.S.C. § 3553(f), the court was bound by *United States v. Spears*, 469 F.3d 1166, 1176 (8th Cir. 2006) (en banc),[1] which relied on the crack/powder disparity in § 841(b) to conclude that "neither [*United States v. Booker*, 543 U.S. 220 (2005)] nor § 3553(a) authorizes district courts to reject the crack-to-powder cocaine quantity ratio mandated by Congress and reflected in the Guidelines." *See also United States v. Johnson*, 474 F.3d 515, 522 (8th Cir. 2007); *United States v. Jenkins*, 505 F.3d 812, 818 (8th Cir. 2007).

About a month after Mr. Davis was sentenced, the law in our circuit and others changed: The Supreme Court held that it was not an "abuse of discretion for a district court to conclude when sentencing a particular defendant [for a crack offense] that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 128 S. Ct. at 575-76 (quoting 18 U.S.C. § 3553(a)). In *Kimbrough*, the defendant's guideline sentence was calculated under the 2004 edition of the guidelines, which subjected "a drug trafficker dealing in crack cocaine ... to the same sentence as one dealing in 100 times more powder cocaine." *Kimbrough*, 128 S. Ct. at 564, 565 n.2; *see also* U.S.S.G. § 2D1.1 (2004). *Kimbrough* held that § 841(b) "does not require ... sentencing courts ... to adhere to the 100-to-1 ratio for crack cocaine quantities other than those that trigger the

---

[1]The Supreme Court later vacated the judgment in *Spears* and remanded for further consideration in light of *Kimbrough v. United States*, 128 S. Ct. 558 (2007), *see Spears v. United States*, 128 S. Ct. 858 (2008). We recently issued a decision vacating in part and reinstating in part, our earlier opinion, with clarifications, *United States v. Spears*, No. 05-4468, 06-1354, 2008 WL 2485329 (June 23, 2008).

statutory mandatory minimum sentences." *Kimbrough*, 128 S. Ct. at 572. As the Court noted, the text of § 841(b) "mandates only maximum and minimum sentences" and "says nothing about the appropriate sentences within these brackets." *Kimbrough*, 128 S. Ct. at 571.

We believe that the rationale of *Kimbrough* applies here even though Mr. Davis was sentenced under the 2007 version of the guidelines, which decreased somewhat the disparity between powder and crack cocaine sentences by "adjust[ing] downward by two levels the base offense level assigned to each threshold quantity of crack cocaine listed in the Drug Quantity Table," *United States v. King*, 518 F.3d 571, 576 (8th Cir. 2008); *see* U.S.S.G. § 2D1.1 (2007); U.S.S.G. Appdx. C, amend. 706. The Court in *Kimbrough*, 128 S. Ct. at 569, referred to the change as a "modest amendment" to § 2D1.1, and the sentencing commission described it as an "interim measure" that did not fully resolve the "urgent and compelling problems" that had been "associated with the 100 to 1 drug quantity ratio." U.S.S.G. App. C, amend. 706 (reason for amend.); *see Kimbrough*, 128 S. Ct. at 569. In any case, a substantial disparity between sentences for equal weights of crack and powder cocaine remains. And, of course, the amendment does not affect the Supreme Court's holding in *Kimbrough*, 128 S. Ct. at 572, that neither the sentencing commission nor the sentencing courts are bound by the 100-to-1 crack/cocaine ratio in § 841(b).

We have said that *Kimbrough* does not require that a district court consider the crack/powder disparity when it imposes a sentence for a crack offense, but that a court errs if it fails to do so because it does not believe that it can. *United States v. Cawthorn*, 527 F.3d 678, 679-80 (8th Cir. 2008). Although Mr. Davis did not raise the issue during sentencing, he contends that the district court's statements affirmatively show that it sentenced him based on an erroneous belief that it was bound by Congressional policies reflected in § 841(b): When addressing the seriousness of Mr. Davis's offense (a sentencing "factor" that a court must consider under § 3553(a)), the district judge first discussed crack as a "serious problem" in

North Omaha. Mr. Davis relies on what the court said next: "but it's – Crack cocaine Congress still recognizes as being substantially more serious than powder cocaine. So I have to take a look at the seriousness of the offense." Because Mr. Davis did not object to the court's remark regarding Congress's view of crack, we may review for plain error only. *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc), *cert. denied*, 546 U.S. 909 (2005); *see* Fed R. Crim. P. 52(b).

To be eligible for relief, Mr. Davis must show that the court committed an error that was plain, that affected his substantial rights, and that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *See United States v. Olano*, 507 U.S. 725, 732-36 (1993) (internal quotation marks and citation omitted); *Pirani*, 406 F.3d at 550. When at the time of sentencing the law was settled and is "clearly contrary to the law at the time of appeal ... it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 468 (1997).

We recently remanded a case for resentencing based on *Kimbrough*. *Cawthorn*, 527 F.3d at 679-80. The defendant in that case had raised the issue at his original sentencing, but the district judge – the same judge who sentenced Mr. Davis – said that he could not consider the crack/powder disparity:

> Mr. Cawthorn, your principal objection or your objection principally goes to a congressional mandate that's been imposed upon the courts and upon our sentencing regime by making the declaration that crack cocaine is-has to be treated 100 times worse than powder cocaine.

> That has been a losing fight for 15 years among the judges in this country. There's no way that – Congress is not inclined to change that. I have an obligation to – to uphold the law whether I agree with it or not. That's just one of the oaths that I've taken.

*Id.* at 679 (quoting the sentencing transcript). As in *Cawthorn*, the judge's statement in this case was consistent with the law that he was then bound to follow.

We believe that the district court's statements must be understood in the context of the law as it was at the time that it sentenced Mr. Davis. We think it plain that the court's statement that "Congress still recognizes [crack cocaine] as being substantially more serious than powder cocaine," referred to the fact that Congress had not amended the 100-to-1 crack/powder ratio in § 841(b), which, as we have noted, the Eighth Circuit said reflected congressional policy that was binding on sentencing courts. In light of *Kimbrough*'s holding that § 841(b) "mandates only maximum and minimum sentences" (which minimum did not apply to Mr. Davis) and "says nothing about the appropriate sentences within these brackets," *Kimbrough*, 128 S. Ct. at 571, we believe that the district court erred (though understandably) by giving weight that the law does not require to congressional policy reflected in § 841(b) when it determined the seriousness of Mr. Davis's offense, a significant "factor" under § 3553(a). We also think that the error is plain, in light of *Kimbrough*'s holding that Congress did not intend the ratio to apply to individual sentencing decisions, and that, in fact, a sentencing court's disagreement with that ratio, even in a mine-run case, could be a discretionary basis for lowering a defendant's sentence.

Mr. Davis next must show that the error affected his substantial rights, which means that there must be a reasonable probability that he would have received a lesser sentence absent the error. *United States v. Kirk*, 528 F.3d 1102, 1110 (8th Cir. 2008). We think that this requirement has been met. Section 3553(a) specifically directs the court, when deciding on a sentence that is "sufficient, but not greater than necessary," to consider "the need for the sentence imposed ... to reflect the seriousness of the offense." 18 U.S.C. 3553(a)(2)(A). In considering this question, the district court relied on a statute that treats crack cocaine as far more serious than powder cocaine. It therefore follows that, if the court had not relied on that statute, there is a reasonable

probability that it would have found that a lesser sentence would "reflect the seriousness of the offense."

In addition, we think that the court's error in attaching undue importance to Congress's view of crack in relation to powder cocaine is particularly significant here because of the court's other findings when it examined the factors in § 3553(a). For example, the district judge said that he had a "comfort zone" about Mr. Davis and did not "worry about [him] again being involved in criminal conduct" or posing a threat to the public, he found that Mr. Davis was not in need of education, and that his admission to Iowa State University was "no small accomplishment" and "suggest[ed] ... that [he] does have the ability to better himself and to be a productive member of society," and the court noted that reports from pretrial services said that Mr. Davis was "doing very well." *See* 18 U.S.C. § 3553(a).

We have previously held that the likelihood that a defendant would have received a lesser sentence is sufficient to show that an error at sentencing "seriously affects the fairness, integrity or public reputation of judicial proceedings." *See United States v. Betterton*, 417 F.3d 826, 832 (8th Cir. 2005) (and cases cited therein); *United States v. Fleck*, 413 F.3d 883, 897 (8th Cir. 2005). Here there is a dramatic disparity in the manner in which § 841(b) treats crack and powder cocaine offenses. Had the sentencing court not believed itself bound to give effect to that disparity, we believe that the court would probably have significantly decreased Mr. Davis's sentence. In addition, we note that the error here pertained to the district court's misunderstanding of an important consideration that it was required to take into account when sentencing Mr. Davis, namely the seriousness of his offense. We believe that a plain error in determining the seriousness of a defendant's offense is the type of error that "seriously affects the fairness, integrity or public reputation" of the proceeding, and we therefore grant Mr. Davis plain error relief by vacating his sentence and remanding for resentencing.

## II.

Mr. Davis next argues that the district court abused its discretion by refusing to give weight to his family circumstances because it concluded that they were not sufficiently extraordinary to support a departure under the guidelines. After *Booker*, a sentencing court may depart from the guidelines range under the terms of the now-advisory sentencing guidelines or it may impose a sentence that varies from the advisory guidelines based on other considerations listed in § 3553(a). The guidelines generally disfavor the consideration of family ties and responsibilities, *see* U.S.S.G. § 5H1.6, but the Supreme Court, in a case decided at the same time as *Kimbrough*, made clear that considerations disfavored by the sentencing commission may be relied on by the district court in fashioning an appropriate sentence, *see Gall v. United States*, 128 S. Ct. 586, 601-02 (2007); *see also United States v. Munoz-Nava*, 524 F.3d 1137, 1148 & n.6 (10th Cir. 2008).

Mr. Davis argued that his family circumstances warranted a decrease in his sentence. He was raised by his mother, who was poor. His father, though successful financially, moved across the country when Mr. Davis was a child and did not participate in his upbringing. Mr. Davis initially had difficulty in school, but he gradually improved; he graduated from high school and, as we have said, was admitted to college. Although his father had agreed to pay for college, he failed to do so. When he was in his late teens, Mr. Davis had a son, whom he participated in raising. At the time Mr. Davis was sentenced, his son was seven years old, and the boy's mother wrote a letter of support for Mr. Davis and was present at his sentencing.

After the district court calculated Mr. Davis's guidelines sentencing range, it allowed the parties to present argument. Mr. Davis's counsel asked for a "deviation" and for the court to "go outside the advisory guidelines." The district court stated that "generally speaking, family problems as such – unless they're extraordinary, the guidelines say you ought not to consider." The court added that "the guidelines are no longer mandatory" but that he was "compelled to consult" them "and figure out

what is an appropriate sentence." We cannot determine with certainty from the record whether the district court denied a departure under the guidelines or refused to vary from the advisory guidelines on the basis of the defendant's family circumstances. We therefore ask the court to note more specifically which of these activities it is engaged in during resentencing.

## III.

Mr. Davis argues generally that his sentence is unreasonable because the district court failed to give sufficient weight to certain sentencing considerations. Because we are remanding to the district court for resentencing, we see no need to address this issue. We vacate Mr. Davis's sentence, and we remand for resentencing not inconsistent with this opinion.

HANSEN, Circuit Judge. I concur in the judgment of remand.

_____