# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3602

_____

United States of America,         *
                                 *

        Appellee,       *
                                 *

v.                         *
                                 *

Sharon  L. Alexander,       *
                                 *

        Appellant.      *

|  |  |
|---|---|
| _____ | Appeals from the United States District Court for the |
| No. 07-3603 | Eastern District of Arkansas. |
| _____ |  |

United States of America,         *
                                 *

        Appellee,       *
                                 *

v.                         *
                                 *

Vondra D. Alexander,       *
                                 *

        Appellant.      *

_____

Submitted: June 10, 2008
Filed: February 26, 2009

_____

Before LOKEN, Chief Judge, EBEL,[1] and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Sharon and Vondra Alexander, who are sisters, each pled guilty to one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. In a joint proceeding, the district court sentenced each defendant to the bottom of her applicable advisory guideline range. Sharon was sentenced to 87 months' imprisonment and Vondra to 63 months' imprisonment. Both appeal, arguing that the district court committed procedural error in the course of imposing sentence. Because we conclude that the district court impermissibly applied a presumption of reasonableness to the advisory guideline range, we remand the cases for resentencing.

I.

In September 2004, the Federal Bureau of Investigation received reports of missing mail order checks from the United Parcel Service ("UPS") distribution center in Little Rock, Arkansas. An investigation revealed that the missing checks were being cashed at local retail establishments. Further inquiry revealed a three-tiered scheme to steal and pass personal checks.

At the first tier of the operation, three employees at the UPS distribution center stole personal checks arriving at the facility. At the second tier, Sharon and Vondra Alexander paid the UPS employees $100 per box of stolen checks. Sharon and Vondra then acquired identification documents with names that matched those on the checks. Some of the identification documents were counterfeit, produced using a computer, scanner, printer, and laminating machine. Others were authentic

_____

[1]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

identification documents that were stolen from the owners.  The third tier of the operation consisted of individuals passing the stolen checks.  Sharon and Vondra recruited at least seven individuals to pass the stolen checks. Either Sharon or Vondra would drive a passer to a store, give the passer a stolen check and identification document, and wait outside while the passer used the check to purchase merchandise or gift cards.  The passers gave any unused checks and the identity documents back to Sharon or Vondra after returning to the car.  Sharon or Vondra split half of the proceeds of the passed checks with the individuals who passed the check, either by letting the individual keep a portion of the merchandise or gift cards or by selling the gift cards or merchandise at a discount and providing a portion of the proceeds of the sale to the passers.  Between January 2003 and December 2004, the operation passed over $178,000 in stolen checks.

On June 8, 2005, a grand jury indicted Sharon and Vondra, along with ten others, on multiple charges in connection with stealing and passing the stolen checks. Sharon and Vondra pled guilty to conspiracy to commit bank fraud, and the government moved to dismiss the remaining charges against them.  After calculating that Sharon's total offense level was 27 and that her criminal history category was III, the district court sentenced her to 87 months' imprisonment, the bottom of the advisory guideline range.  The court calculated Vondra's total offense level at 26 and criminal history category at I, and sentenced her to 63 months' imprisonment, also the bottom of the guideline range.  Both defendants appeal.

II.

A.

The Alexanders point to the district court's explanation of its decision to impose sentences within the advisory guideline range and argue that the court committed error that requires resentencing.  In the terminology of *Gall v. United States*, 128 S. Ct. 586

(2008), which was decided after the sentencing in this case, the Alexanders present a claim of "procedural error." *Id.* at 597. The contention is based on the following passages from the district court's oral statement of reasons at sentencing:

> Well, the thing that I guess troubled me most about this cause from the outset is the sentences that a number of these individuals have received as opposed to the sentences for which these defendants were faced. But the problem in applying the guidelines here, *I either throw the guidelines away or you apply the guidelines*.

> And I've spoken my mind about the fairness of the guidelines and how in many cases they are not fair to all defendants. *However, the Eighth Circuit has stressed the importance of applying the guidelines unless there are just circumstances which takes the case completely away from the guidelines*. . . .

> I do think that Ms. Vondra Alexander is entitled to be sentenced at the low end of the guideline range. I can't reconcile it with sentences that individuals got but I know the system works this way. . . . The way these things are charged, the way the plea agreements come down all *leave me with very little discretion to apply this*.

> *So I can't say that the guidelines here are totally unreasonable when I just consider the conduct of these two sisters*. So I'm going to sentence both of them at the low end of the guideline range.

(S. Tr. 227-28) (emphasis added). Neither defendant objected at sentencing to the district court's procedures, so we consider whether the court's approach constitutes a plain error warranting relief under current law. *See Johnson v. United States*, 520 U.S. 461, 466-68 (1997).

In light of the Supreme Court's decisions in *Gall*, *Rita v. United States*, 127 S. Ct. 2456 (2007), and *United States v. Booker*, 543 U.S. 220 (2005), the law is clear

-4-

that the district court is charged with determining an appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a), and that the court must not accord the advisory guideline range a presumption of reasonableness. *Rita*, 127 S. Ct. at 2465. The Court in *Gall* thought it "uncontroversial" that a major variance from the advisory range should be supported by a more significant justification than a minor variance, *Gall*, 128 S. Ct. at 597, but held at the same time that an appellate rule requiring "proportional" justifications for variances from the advisory guideline range is inconsistent with *Booker*. *Id.* at 594. *Gall* also emphasized that appellate review for "reasonableness" must be conducted under a deferential abuse-of-discretion standard. *Id.* at 591.

We think it plain that the district court's approach in this case is inconsistent with current law. A rule that the guidelines must be applied "unless there are just circumstances which takes the case *completely* away from the guidelines," or unless the guideline sentence is "*totally* unreasonable," is the functional equivalent of an impermissible presumption of reasonableness. While we do not agree with the district court's entire assessment of circuit law as of November 2007, *see United States v. Lee*, 553 F.3d 598, 601-02 (8th Cir. 2009), the court evidently believed that it was bound to apply the guidelines, without even a minor variance, unless the advisory sentence was unreasonable and there were strong reasons that compelled a non-guideline sentence. In any given case, however, there is a range of reasonable sentences. That the guideline sentence is one reasonable option does not mean that a non-guideline sentence is necessarily unreasonable, or vice-versa. *See United States v. Solis-Bermudez*, 501 F.3d 882, 884-85 (8th Cir. 2007) (explaining that while sentences within the advisory range are "presumptively reasonable" on appellate review, "[t]his is not to say that non-Guidelines sentences are presumptively unreasonable; they are not"). A guideline sentence often may be appropriate, given the Sentencing Commission's expertise and the statutory purpose of avoiding unwarranted sentence disparities, *see* 18 U.S.C. § 3553(a)(6), but the district court must reach that conclusion on its own in light of the § 3553(a) factors, not because the court of

appeals precludes a non-guideline sentence in the absence of extraordinary circumstances. *See Gall*, 128 S. Ct. at 595.

We therefore conclude that the district court committed a plain procedural error under current law. The record also demonstrates at least a reasonable probability, though not necessarily a likelihood, that the district court would have imposed a more lenient sentence without the error. The court remarked that "the thing that I guess troubled me most about this cause from the outset is the sentences that a number of these individuals have received as opposed to the sentences for which these defendants were faced," alluded to previous cases in which the court had "spoken [its] mind about the fairness of the guidelines and how in many cases they are not fair to all defendants," and professed to have "very little discretion" in selecting a sentence. (S. Tr. 227). These comments suggest that the district court, applying the correct approach under the current sentencing regime, may well have chosen to impose a non-guideline sentence for these defendants. These circumstances also meet the fourth criteria for relief under the plain error standard. *See United States v. Davis*, 538 F.3d 914, 919 (8th Cir. 2008). Therefore, while expressing no view on the appropriate sentences, we conclude that a remand is required.

B.

Sharon Alexander raises one other issue concerning the district court's calculation of her advisory guideline range. She argues that the court erred by increasing her offense level by four levels, pursuant to USSG § 3B1.1(a), on the ground that she was a leader or organizer of a criminal activity involving five or more participants. Because this issue will recur at resentencing, we proceed to consider it.

The guidelines explain that in evaluating whether a defendant was a leader or organizer under § 3B1.1(a), the court should consider:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1, comment. (n.4). We review the district court's enhancement of a guideline sentence based on aggravating role in the offense for clear error. *United States v. Guzman-Tlaseca*, 546 F.3d 571, 579-80 (8th Cir. 2008).

We conclude that the district court did not clearly err in finding that Sharon was a leader or organizer of the plan to pass stolen checks. The district court found by a preponderance of the evidence that Sharon bought stolen checks from UPS employees, recruited individuals to pass the checks, "arranged times and places to pass these checks," sometimes directed passers what to purchase with the checks, shared in the proceeds of the fraudulent checks, and generally "started the ball rolling and essentially oversaw how it was going to be." (S. Tr. 204). The court also found that Sharon "derived more income from this enterprise than any of the individual check passers," because she was involved with many different check passers. (S. Tr. 205). There is no dispute that the criminal activity involved five or more participants. The district court's findings are adequately supported by the record, and they amply justify the finding that Sharon was a leader or organizer of a criminal activity involving five or more individuals.

\*       \*       \*

For the foregoing reasons, we vacate the judgments and remand the cases for resentencing.

_____