**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 08-3881
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Joseph Martin, Jr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  September 25, 2009
Filed:  October 19, 2009
_____

Before LOKEN, Chief Judge, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Joseph Martin Jr. pleaded guilty to two counts of manufacturing, distributing or possessing with intent to manufacture or distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).  The district court[1] sentenced Martin to 160 months' imprisonment, to be followed by five years of supervised release.  Martin appeals from his sentence, arguing:  (1) the district court erred in determining that he was responsible for manufacturing cocaine base, rather than merely for the distribution of cocaine powder; (2) he should have been sentenced below the

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

guidelines range because of sentencing entrapment; and (3) the government breached the plea agreement by failing to recommend an acceptance of responsibility reduction and by encouraging an obstruction of justice enhancement. We affirm.

## I. Background

In exchange for Martin's plea, the government agreed to recommend that the sentencing court grant a three-level reduction in the offense level for acceptance of responsibility and avoidance of trial pursuant to U.S. Sentencing Guidelines §§ 3E1.1(a) & (b).

The facts set forth in the plea agreement were that a cooperating individual (CI) contacted Martin in November 2006 about purchasing crack. Martin agreed to arrange a purchase of powder cocaine from a third party, and Martin offered to cook the powder cocaine into crack for a separate fee. The CI gave $1700 to Martin for the purchase and $700 for converting the cocaine into crack. Together they purchased approximately two ounces of powder cocaine. After the purchase, Martin gave the powder cocaine to the CI. Martin and the CI then drove in separate cars to Martin's residence, where the CI returned the powder cocaine to Martin. Martin then cooked the powder cocaine into crack, using a coffee cup, baking soda, and microwave oven. After the cooking was finished, Martin gave the crack to the CI. The finished product was determined to consist of 53.8 grams of crack.

In December 2006, the CI again contacted Martin about purchasing crack and a similar train of events ensued, with the CI providing $2550 to Martin for the purchase of cocaine and $900 for converting it into crack. As in the first transaction, Martin gave the powder cocaine to the CI following the purchase, whereupon the two then traveled in separate cars to Martin's residence, where the CI gave the powder cocaine back to Martin. Using the same technique, Martin cooked the crack and then gave it to the CI. The transaction involved 36.87 grams of crack.

The plea agreement included a number of caveats. The government reserved the right to balk on recommending an acceptance of responsibility reduction if new information "inconsistent with the defendant's acceptance of responsibility" came to light. The agreement also specified that "any actions of the defendant which occur or which become known to the government subsequent to this agreement and are inconsistent with the defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for loss of acceptance of responsibility." It also stated that Sentencing Guidelines (guidelines) issues not explicitly mentioned in the agreement, but referenced in the Presentence Investigative Report (PSR), "may be presented to the Court for consideration." The agreement specified that post-plea criminal conduct by the defendant would release the government from "any obligations or limits on its power to prosecute the defendant," and that any such conduct would be grounds for loss of the acceptance of responsibility reduction. It also stated that the sentencing court was not bound to follow the government's recommendations and that the sentencing court's refusal to follow these recommendations was not grounds for withdrawal of the plea. The plea agreement specifically noted that the parties disagreed about when the transactions were completed, and the parties anticipated arguing this matter before the sentencing court.

After entering into the plea agreement, Martin remained in custody of the United States Marshal at the St. Louis County Justice Center, during which time he made a number of statements from jail that were recorded by jail officials and analyzed by the FBI. In these statements, Martin denied responsibility for the crimes alleged, threatened to physically harm his girlfriend and the government agents involved in the case, and discouraged witnesses from cooperating with government investigators. Martin also violated jail visitation policy by arranging visits with prohibited visitors.

Based on these statements and actions, Probation and Pretrial Services submitted a PSR that did not recommend a reduction for acceptance of responsibility

and instead recommended adding two offense levels for obstruction of justice. Because the obstruction of justice occurred while Martin was incarcerated, the PSR recommended adding two points to his criminal history pursuant to U.S.S.G. § 4A1.1(d). These additional two points raised Martin from a category I to a category II offender. The PSR further recommended that the district court find that crack, rather than powder cocaine, should determine the base offense level. According to the PSR, Martin's offense level should have been 32, criminal history category II, for a guideline range of 135 to 168 months' imprisonment. If the substance in question had been powder cocaine and if Martin had received the acceptance of responsibility reduction and no obstruction of justice enhancement, then his offense level would have been 13, criminal history category I, with a guideline range of 12-18 months' imprisonment.

Martin filed multiple objections to the PSR. He argued, first, that the sentence should be based upon the guidelines for cocaine powder because the transaction ended when the CI took possession of the cocaine powder. Second, Martin argued that his statements from jail were not general denials of responsibility for the crimes alleged, but rather specific denials of responsibility for distributing crack. Thus, an acceptance of responsibility reduction was still warranted. Third, Martin argued because his telephone conversations were not actual attempts to obstruct justice but rather expressions of frustration about his prosecution and detention, an obstruction of justice enhancement was unjustified.

After a lengthy sentencing hearing with multiple witnesses, the district court determined that Martin should be sentenced for manufacturing 90.67 grams of crack and that Martin's post-plea conduct warranted a two-level enhancement for obstruction of justice rather than a reduction for acceptance of responsibility. The district court then sentenced Martin as set forth above.

## II. Analysis

### A. Powder/Crack Identification

Martin argues that the district court should have sentenced him according to the guidelines range for cocaine powder rather than crack because the transaction ended when the powder cocaine was delivered to the CI, rather than after delivery of the crack. Identification of controlled substances is a factual finding reviewed for clear error, and we will reverse only when we are definitely and firmly convinced that the district court was mistaken. United States v. Whitehead, 487 F.3d 1068, 1071 (8th Cir. 2007).

As outlined above, Martin arranged on two separate occasions for the purchase of powder cocaine on behalf of the CI, distributed powder cocaine to the CI, took the same powder cocaine from the CI, converted the powder cocaine into crack, and gave crack to the CI. On both occasions, Martin solicited and received a separate fee from the CI for manufacturing crack.

Like the district court, we find Martin's argument unconvincing. In the plea agreement, Martin admitted facilitating the purchase of the powder cocaine for the purpose of manufacturing crack. The parties disagreed as to whether the transactions were completed when the CI took possession of the powder cocaine or when Martin handed the crack to the CI. The district court considered extensive testimony on this topic. Its conclusion that the transaction did not end until the crack was delivered is well supported by the evidence, and thus we are not firmly and definitely convinced the district court was mistaken.

### B. Powder/Crack Disparity

Martin argues that the district court erred in not granting him a departure based upon the disparity between cocaine powder and crack sentences. We review the district court's application of the guidelines *de novo* and review factual findings for clear error. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005). Because this objection was not raised below, we review it under plain error analysis. United States v. Davis, 538 F.3d 914, 917 (8th Cir. 2008).

Martin relies upon Davis for the proposition that although a district court need not deviate from the guidelines due to the powder/crack disparity, a court errs when sentencing if it does not believe that it can deviate from the guidelines. Id. He argues that the district court's failure to refer to its ability to depart from the guidelines proves that the district court was under the false belief that it had no discretion to grant a downward departure. The absence of any explicit statement is not surprising, given that this objection was not raised before the district court. Davis holds that a district court errs when it denies its ability to grant a downward departure, and imposes a sentence predicated upon that false belief. Id. In this case, there is no evidence that the court was under a mistaken impression about its discretionary power. Indeed, the court considered a PSR that specifically noted the court's discretion in this regard. Martin's extensive dealing with controlled substances and previous crimes were adequate grounds for not granting a downward departure based on the powder/crack disparity. Thus, the district court did not plainly err in failing to grant Martin a downward departure on these grounds.

### C. Sentencing Entrapment

Martin argues that the government's use of sentencing entrapment justifies a sentence below the guidelines range. Sentencing entrapment occurs when official conduct leads an individual otherwise indisposed to dealing in a larger quantity or

different type of controlled substance to do so, and the result is a higher sentence. United States v. Searcy, 233 F.3d 1096, 1099 (8th Cir. 2000). When considering a claim of sentencing entrapment, the locus of inquiry is the defendant's predisposition. Id. at 1099-1101. The defendant bears the burden to prove by a preponderance of evidence that he lacked the predisposition to sell a larger quantity or different type of drug. United States v. Searcy, 284 F.3d 938, 942 (8th Cir. 2002). The court considers the government's conduct only to show inducement. Searcy, 233 F.3d at 1101. The government's conduct is not determinative, and the central question throughout the analysis of a sentencing entrapment claim is whether the defendant was predisposed to sell a larger quantity or a different type of drug. Id. at 1101-02. Sentencing entrapment is a factual finding that we review for clear error. United States v. Ruiz, 446 F.3d 762, 776 (8th Cir. 2006).

In Searcy, we found that sentencing entrapment could have occurred when a defendant, who had "never dealt crack," was coaxed to do so by a government informant. 233 F.3d at 1100. In this case, Martin had sold the CI smaller quantities of crack on previous occasions. In response to the CI's request that Martin facilitate the purchase of larger quantities of crack from a third party, Martin proposed to arrange a larger purchase of cocaine powder and offered to manufacture the crack for a separate fee. Martin devised this plan on his own, and he executed it without government coercion. There is no evidence that Martin was indisposed to this course of events. Assuming the claim of sentencing entrapment was properly raised at sentencing (a question about which we have some doubt), the district court's failure to find sentencing entrapment was not clearly erroneous.

### D. Breach of the Plea Agreement

Finally, Martin contends that the government breached the plea agreement by arguing against the acceptance of responsibility reduction and in favor of the obstruction of justice enhancement. "We review *de novo* issues pertaining to the

interpretation and enforcement of a plea agreement. Plea agreements are contractual in nature and should be interpreted according to general contractual principles." United States v. Thompson, 403 F.3d 1037, 1039 (8th Cir. 2005) (citations omitted). If a defendant believes the government has breached a plea agreement, he must object to preserve the issue for appeal. Puckett v. United States, 129 S. Ct. 1423, 1428 (2009). A defendant who fails to object properly is precluded from raising the matter on appeal. Id. at 1429. This general rule, however, is subject to a narrow exception: "A plain error that affects substantive rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Plain-error review under Rule 52(b) involves four aspects: (1) the defendant must not affirmatively waive the error; (2) the error must be clear or obvious; (3) the error must affect the defendant's substantive rights, which usually means the defendant must show the outcome would have been different had the error not been committed; and (4) the court of appeals must decide whether to exercise its discretion in remedying the error, a discretion to be reserved for those cases that undermine the fairness, integrity, or public reputation of judicial proceedings. Puckett, 129 S. Ct. at 1429.

Martin maintains that he preserved his objection by arguing that the district court should have held the government to the terms of the plea agreement. As the government points out, however, Martin did not argue that the government breached the plea agreement, or that he should have been allowed to rescind his plea at sentencing given the government's supposed breach. Martin solely argued that his post-plea conduct did not justify an obstruction of justice enhancement and loss of the acceptance of responsibility reduction. Thus, having not been properly preserved for appeal, we review the claim of breach for plain error. Id. at 1428-29.

It is neither clear nor obvious that the government breached the plea agreement. The agreement stated that the government could refrain from recommending an acceptance of responsibility reduction if new information came to light after the plea and before sentencing. The agreement also released the government from its

responsibilities if Martin engaged in post-plea criminal conduct. Martin's statements from jail and violations of jail rules triggered both of these provisions, which allowed the government to refrain from recommending an acceptance of responsibility reduction. Further, the plea agreement also stated that guidelines issues not mentioned in the agreement but raised by the PSR could be presented to the court for consideration. The PSR recommended an obstruction of justice enhancement, Martin opposed the enhancement, and the government responded. The government did not initiate the obstruction of justice enhancement, arguing in favor only after it was already before the court. Thus, there was no breach of the agreement. Even if we found a breach by the government, Martin would have to show that the court would have acted differently had there been no breach. No such proof has been offered, and thus no plain error occurred.

## III.

The judgment is affirmed.

_____