NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2262

_____

UNITED STATES OF AMERICA

v.

HENRY BAIRD,
                        Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-17-cr-00139-002)
District Judge:  Honorable Matthew W. Brann
_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 4, 2021
_____

Before: KRAUSE, PHIPPS, and FUENTES, *Circuit Judges*.

(Filed: August 16, 2021)
_____

OPINION*
_____

FUENTES, *Circuit Judge*.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Henry Baird appeals his sentence of 168 months' imprisonment for conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 846. Baird argues that the District Court erred both by denying him a mitigating role adjustment and denying him a downward variance based on sentencing entrapment or manipulation. He also argues that the sentence was procedurally unreasonable because the District Court never addressed his objection to the drug weight calculation. For the following reasons, we will affirm.

I.

In September 2016, the FBI began an undercover operation to infiltrate the Aryan Strike Force ("ASF"), a white nationalist organization that advocates the use of violence in achieving the goal of "protect[ing]" the white race.[1] Upon receiving information that members of ASF were gathering firearms, undercover agents initiated contact with the organization's founder, Joshua Steever, in order to identify other members and learn about any planned criminal activity. When the agents learned that the group wanted to obtain, but could not afford, additional firearms, the agents presented members of ASF with an opportunity to traffic simulated methamphetamine in order to raise funds. Members of ASF then participated in four controlled methamphetamine runs.

Baird was recruited into ASF by Steever during the operation. When ASF's president was arrested on unrelated charges, Baird stepped into that role. He participated in the third and fourth runs, acting as security while the group transferred two sixteen-

---

[1] App. 53a.

pound shipments of simulated meth and fifty receivers and inserts for automatic weapons. He also contributed to a planning meeting in which the group discussed the details of the fourth run and the type of firearms they intended to purchase with the profits.

Baird and five other members of ASF were indicted on sixteen counts related to drug and weapons trafficking and money laundering. Baird pled guilty to one count of conspiracy to distribute 500 grams or more of methamphetamine. Based on a mandatory minimum of ten years[2] and a Sentencing Guidelines range of 135 to 168 months, the District Court sentenced Baird to 168 months.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review the District Court's factual findings for clear error and its application of the Guidelines to facts for abuse of discretion.[3] When reviewing the reasonableness of the District Court's sentence, we use an abuse-of-discretion standard.[4]

## III.

### A. Mitigating Role Adjustment

Baird argues that the District Court erred by denying him a mitigating role adjustment as a minimal or minor participant in the conspiracy. A minimal participant is

---

[2] *See* 21 U.S.C. § 841(b)(1)(A).

[3] *United States v. Tupone*, 442 F.3d 145, 149 (3d Cir. 2006).

[4] *United States v. Lopez*, 650 F.3d 952, 959 (3d Cir. 2011).

one who was "plainly among the least culpable of those involved" and lacked "knowledge or understanding of the scope and structure of the enterprise."[5] A minor participant is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."[6]

The District Court's findings that Baird's role was "substantially similar to that of other participants" and that he had "knowledge of the scope and the structure of the enterprise" are not clearly erroneous.[7] The record shows that Baird actively supported ASF's drug distribution conspiracy. He had a clear understanding of the group's plan to traffic drugs and willingly contributed to two separate transfers of contraband. At a meeting during which the group planned one of the transports, Baird stated that he was "not afraid to get his hands dirty" and committed to playing his part.[8] We reject Baird's arguments that his title as president was merely "ceremonial" and that his short-term participation constituted a minimal or minor role.[9] Thus, we find that the District Court did not abuse its discretion by denying Baird a mitigating role adjustment.

---

[5] U.S.S.G. § 3B1.2 cmt. n.4.

[6] *Id.* § 3B1.2 cmt. n.5.

[7] App. 17a.

[8] App. 14a.

[9] Baird Br. 9.

B. Sentencing Entrapment or Sentencing Manipulation

Baird also argues that the District Court erred by denying a downward variance based on sentencing entrapment or sentencing manipulation. While our sister courts of appeals are split on the validity of sentencing entrapment and manipulation, this Court has "neither adopted nor rejected the[se] doctrines."[10] Sentencing entrapment "occurs when official conduct leads an individual otherwise indisposed to dealing in a larger quantity or different type of controlled substance to do so, and the result is a higher sentence."[11] Sentencing factor manipulation would result in a due process violation "when the government unfairly exaggerates the defendant's sentencing range by engaging in a longer-than-needed investigation and, thus, increasing the drug quantities for which the defendant is responsible."[12] We have declined to rule on the legal merits of either theory in cases where the defendant has not established the "requisite factual predicates."[13] The same outcome is warranted here.

The District Court did not clearly err in concluding that Baird was not indisposed to providing security for the kind of criminal activity that occurred in this case, even if he had not previously trafficked methamphetamine. He had a history of both racially motivated violence, including aggravated assault, and participating in white nationalist

---

[10] *United States v. Sed*, 601 F.3d 224, 229 (3d Cir. 2010).

[11] *Id.* at 230 (quoting *United States v. Martin*, 583 F.3d 1068, 1073 (8th Cir. 2009)).

[12] *Id.* at 231 (quoting *United States v. Torres*, 563 F.3d 731, 734 (8th Cir. 2009)).

[13] *Id.* at 230; *see also United States v. Tykarsky*, 446 F.3d 458, 476 n.13 (3d Cir. 2006); *United States v. Raven*, 39 F.3d 428, 438 (3d Cir. 1994).

organizations. He also expressed the desire to secure additional firearms, which was the main reason ASF began trafficking contraband. When given the opportunity to withdraw, Baird assured an undercover agent of his familiarity with this kind of illegal activity and his willingness to participate. We therefore agree with the District Court that there was no sentencing entrapment here.

We likewise agree with the District Court that the FBI did not engage in sentencing manipulation. We have previously stated that it is not sentencing manipulation for agents to "intentionally delay[] [a] sting operation" in a way that leads to a greater penalty for the defendant.[14] While the FBI agents maintained control of much of the operation, they did so in order to preserve public safety, identify new members of ASF, and investigate any additional plans for criminal activity. The FBI determined a drug quantity and type that would make the enterprise realistic, which is reasonable in the context of a sting operation.[15] Baird was given multiple opportunities by the agents to withdraw from the enterprise but chose to continue, even as other ASF members withdrew. Furthermore, his base offense level already accounted for the fact that he participated in only two of the four runs. Therefore, the FBI's actions in this case were not "sufficiently outrageous to violate" Baird's due process rights.[16]

---

[14] *Sed*, 601 F.3d at 231 (alterations in original) (quoting *Tykarsky*, 446 F.3d at 476 n.13).

[15] *See Raven*, 39 F.3d at 438; *see also United States v. Washington*, 869 F.3d 193, 212 (3d Cir. 2017).

[16] *Sed*, 601 F.3d at 231.

6

Based on Baird's predisposition to commit this crime and his continued participation when he was given the chance to withdraw, we find that the District Court did not err in refusing to depart downward based on either sentencing entrapment or sentencing factor manipulation, even assuming we recognized those doctrines.

## C. Drug Weight Calculation

Baird also challenges his sentence as procedurally unreasonable because the District Court never addressed his objection pursuant to U.S.S.G. § 2D1.1, Application Note 5 that the drug weight calculation was overstated. Application Note 5 provides that, in "reverse sting" operations when undercover agents negotiate as the sellers, rather than the purchasers, of the drugs, the agreed-upon amount will generally determine the defendant's drug quantity.[17] However, if "the defendant did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, the agreed-upon quantity," then the drug weight calculation should "exclude . . . the amount of controlled substance that the defendant establishes that the defendant did not intend to provide or purchase or was not reasonably capable of providing or purchasing."[18]

Although Baird invokes Application Note 5, it does not apply in this case as he does not establish that he lacked intent to provide the amount used to determine his sentence. Baird's sentence reflects the amount of simulated methamphetamine, thirty-two pounds, that was actually delivered in his two runs. He agreed to these transfers,

---

[17] U.S.S.G. § 2D1.1 cmt. n.5.

[18] *Id.*

7

participated in the deliveries, and admitted to these weights in his plea agreement.

Nevertheless, he argues that a downward variance is proper because law enforcement

controlled the quantity of drugs in the operation. Application Note 5, however, does not

contemplate a departure simply because undercover agents chose the quantity of drugs to

transfer. Instead, it allows a defendant to establish—for purposes of setting his base

offense level—that he did not intend to provide, or was not reasonably capable of

providing, the agreed-upon amount, but rather a lesser amount.[19] Baird has neither

established nor even suggested an alternative drug weight that he intended to transfer.

Baird's argument, while framed under Application Note 5, merely repackages his

argument that the FBI engaged in sentencing entrapment. Although the District Court did

not address the drug weight calculation specifically, it did fully address the substance of

this objection in rejecting Baird's sentencing entrapment claim. We therefore reject

Baird's argument that his sentence was procedurally unreasonable.

IV.

For the reasons stated above, we will affirm the District Court's judgment of

sentence.

---

[19] *See, e.g.*, *United States v. Sau Hung Yeung*, 241 F.3d 321, 324-27 (3d Cir. 2001).